## MARKOWITZ v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division One, February 15, 1905.*

1. **NEGLIGENCE: Master and Servant: Driver.** The negligence of a driver sitting beside plaintiff on the driver's seat on her wagon is her negligence.

2. ————: **Seeing Car.** Where the street car which struck plaintiff's wagon as it was about to cross the track was in plain view and could have been seen by her and her driver, in ample time to have avoided the accident, if they had looked, and there is no suggestion of an excuse for their failure to see it, she was guilty of such contributory negligence as bars her right to recover for her consequent injuries.

3. ————: **Humanitarian Doctrine: Avoidable Accident.** A showing of a mere possibility that the accident might have been avoided in spite of plaintiff's contributory negligence is not sufficient to authorize the invocation of the humanitarian doctrine. If the utmost that can be said of plaintiff's evidence is that it tends to show that defendant's servant in charge of the car was guilty of some negligence in failing to stop the car after he discovered plaintiff's dangerous proximity to the track, while it shows her own negligence conspicuously in not looking for the approaching car, the plaintiff is not entitled to have submitted to the jury the question of whether defendant's servant was guilty of a reckless and wanton disregard of human life in failing to stop the car in time to have avoided the accident after discovering her dangerous proximity thereto; for, in such case, it cannot be said as a certainty that he was guilty of negligence in presuming that plaintiff would exercise prudence and ordinary care to look for the approaching car.

4. ————: **Right Verdict: New Trial: Instructions.** Where the verdict for defendant was the only verdict the evidence warranted, and plaintiff's own evidence shows she was not entitled to recover, the order granting her a new trial will be set aside, whether the instructions were right or wrong.

---

*Note—Decided December 22, 1904; motion for rehearing filed; motion overruled February 15, 1905.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

REVERSED AND REMANDED (*with directions*).

*John H. Lucas* for appellant.

(1) If upon the pleadings and evidence the verdict was for the right party, no error in giving instructions would justify a new trial. Harmuth v. Railroad, 129 Mo. 642; Vogg v. Railroad, 138 Mo. 180; Bartley v. Railroad, 148 Mo. 142; Fox v. Windes, 127 Mo. 514; Fitzgerald v. Barker, 96 Mo. 666. (2) (a) The evidence at the trial and the undisputed facts clearly prove that respondent was guilty of such contributory negligence as would bar a recovery. Boyd v. Railroad, 105 Mo. 371; Davies v. Railroad, 159 Mo. 1; Watson v. Railroad, 133 Mo. 246; Peterson v. Railroad, 156 Mo. 561; Tanner v. Railroad, 161 Mo. 510; Holwerson v. Railroad, 157 Mo. 216; Hook v. Railroad, 162 Mo. 569. (b) Where both parties have been guilty of negligence which directly contributed to cause the injury, there can be no recovery. In the case of mutual or concurrent negligence, there can be no recovery. Hogan v. Railroad, 150 Mo. 55; Smith v. Railroad, 52 Mo. App. 41; Watson v. Railroad, 133 Mo. 251; Davies v. Railroad, 159 Mo. 1. (3) There was no evidence offered upon the trial proving or tending to prove that the failure to ring the bell by the motorman was the proximate cause of the injury, and, therefore, with respect to that charge of negligence contained in the petition, the court should have sustained a demurrer to the evidence. Heinzle v. Railroad, 81 S. W. 848; Schmidt v. Railroad, 160 Mo. 43; Hanlon v. Railroad, 104 Mo. 381; Karle v. Railroad, 55 Mo. 482; Zimmerman v. Railroad, 71 Mo. 476; Barkley v. Railroad, 96 Mo. 367; Hudson v. Railroad, 101 Mo. 13; Henry v. Railroad, 76 Mo. 293. (4) There is no evidence that the motor-

man of appellant in charge of the car failed to exercise reasonable care and diligence to stop the car within a reasonable time after the respondent was in a position of peril, and the motorman saw, or, by the exercise of ordinary care, might have seen, the perilous position of the respondent.

*Leon Block* and *Wm. C. Hock* for respondent.

(1) Respondent's negligence, if she was negligent, in not observing the approaching car, does not relieve the appellant of liability where (as in this case) the motorman saw respondent in a perilous situation in time to have avoided injuring her. Bunyan v. Railroad, 127 Mo. 12; Klockensmith v. Railroad, 172 Mo. 686. (2) (a) Respondent's perilous situation is not confined to the time her horse came upon appellant's track. Just when such a situation arises depends upon the surrounding facts and is largely a question for the jury. In this case it arose the moment the motorman saw the respondent approaching the track in a manner indicating that she was intending to cross in front of a near-approaching car which she seemingly did not see. Bunyan v. Railroad, 127 Mo. 18; Ennis v. Railroad, 155 Mo. 20; Klockensmith v. Railroad, 172 Mo. 687; Jackson v. Railroad, 157 Mo. 646. (b) This accident was not the result of mutual or concurring negligent acts of the respondent and the motorman. The causal connection between respondent's negligence and her resulting injuries ceased the moment the motorman observed her in a position of peril and in time to have avoided the injury to her. Watson v. Railroad, 133 Mo. 251; Bunyan v. Railroad, 127 Mo. 21. (3) Whether or not the failure to ring the bell contributed to the injury was, under the evidence, a question for the jury. Hogan v. Railroad, 150 Mo. 54. (4) The presumption is always in favor of the ruling of the trial court being correct, and this presumption is

stronger where the appellant appeals from the ruling of the trial court in awarding respondent a new trial. Hewitt v. Steele, 118 Mo. 463; Kuenzel v. Stevens, 155 Mo. 285; Taylor v. Railroad, 163 Mo. 191; Yates v. Shanklin, 85 Mo. App. 360; Shea v. Seelig, 89 Mo. App. 146; Campbell v. Railroad, 86 Mo. App. 70. (5) If the trial court's action in awarding a new trial can be sustained on any grounds assigned in the motion therefor, then such action should be affirmed. Johnson v. Boonville, 85 Mo. App. 202; Bank v. Wood, 124 Mo. 72; Hewitt v. Steele, 118 Mo. 463.

VALLIANT, J.—Plaintiff alleges that she suffered a personal injury in consequence of a collision between a wagon in which she was riding and a street car of defendant. She sues for $5,000 damages, alleging that the collision was the result of defendant's negligence.

The scene of the accident was in Fifth street between Walnut and Main in Kansas City. Fifth street runs east and west, Walnut and Main cross it at right angles running north and south; Walnut is east of Main. Between Walnut and Main streets and parallel to them, is an alley, which also crosses Fifth street at right angles. Defendant operates a double-track street railroad along Fifth street; a car going west runs on the north track, crossing Walnut, the alley and Main street. Just west of the alley on the north side of Fifth street is the city market.

On December 24, 1901, the plaintiff was seated beside the driver, a colored man, on the driver's seat on an open one-horse spring wagon, driving through the alley northward, aiming for the market house. They emerged from the alley on the south side of Fifth street, drove across the south track, and just as the front wheel of the wagon got on or sufficiently near the south rail of the north track, a car of defendant going

west struck the wagon with a blow sufficient to break the shaft from the axle on that side, and the jar caused the plaintiff's injury. She testified that the car struck the wagon "and it jolted very hard, and I went on the end of the seat and that gave me an awful pain in the back and I felt kind of funny in my whole body. Otherwise I would have went over on the left side on the street, but the colored boy held me back. And he helped me down from the wagon. I couldn't sit there."

The petition alleges negligence in four specifications:

"First, the motorman of said defendant in charge of said car negligently failed to stop the same in time to avoid said collision, which, by the exercise of ordinary care, he might have done.

"Second, the servants of said defendant in charge of said car negligently failed to ring any bells or to give other warning of the approach of said car.

"Third, the motorman of said defendant in charge of said car negligently failed to keep a vigilant watch ahead and negligently failed to observe said wagon on or approaching said north track in a position of danger in time to have stopped said car and thereby avoid said collision, which said motorman might have done had he been exercising ordinary care.

"Fourth, the motorman of said defendant in charge of said car negligently failed to stop the same within a reasonable time after he saw, or by exercising ordinary care, might have seen the dangerous situation of this plaintiff."

The testimony on the part of the plaintiff tended to prove as follows:

It was a clear winter day. The car going west stopped at Walnut street to take on some passengers and then moved on its course; it was going slowly, not to exceed four miles an hour. The street was crowded with vehicles and people. The wagon on which the

plaintiff was riding came out of the alley into Fifth street, aiming northward across the tracks. The driver testified: "When we was coming out through the alley between Walnut and Main we didn't see any car at all; but when we got on the second track we seen the car about as far as from here over there . . . I couldn't tell exactly how far, but anyhow, we were beckoning him to stop . . . for him to hold up, because I couldn't go either forward or back, the people was ahead of me in the crowd and wagons behind me. . . . He just came right on up and hit the wagon and broke the shaft loose and jostled us both up." Witness said he did not stop or check up at all when he came into the street from the alley and was going tolerably fast when he got on the north track, he was aiming to get out of the crowd. The car stopped in almost the same instant that it struck the wagon. It shoved the wagon about two feet.

The plaintiff herself testified that they saw no car until they were on the second track, the north track. She said: "It was awfully crowded with people and we looked and, of course, I did not see any car at all. Of course there was so many people in front of us and we drove right in and when we got to the second track I saw the car and hallowed and screamed as much as possible and it looks to me like there was a car that struck the wagon and it jolted very hard." She was asked how far the car was from her when she hallowed to the motorman, she said: "About as far as from here to that wall; about twenty-five feet. I couldn't tell you exactly, I began to make motions and to hollow and scream and the rest of the people right in front of our wagon, they began to make motions to the motorman and he was keeping on going slowly." She said that when they came out of the alley they saw no car, that they could not see either east or west more than twenty-five feet, and when asked to explain why she could not see farther, seated as she was above the

heads of the people on the driver's seat in the wagon, she said she could not explain it, but that twenty-five feet east or west was as far as she could see. Her attention was called to her statements on a former examination in which she was asked if she could not see for the distance of a half a block, her answer being, "I suppose so; I couldn't tell exactly; I saw quite a distance," to which she replied, "Well, that is twenty-five feet." She testified that her eyesight was good. She and the negro driver of her wagon testified that they did not hear any bell or gong. There was testimony tending to show that the jar of the collision caused serious injury to the plaintiff.

At the close of the plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence, which the court refused, and exception was taken.

On the part of defendant the testimony tended to prove as follows:

The car stopped at Walnut, and then moved on westward, going slowly. It was a fine clear day, and there was nothing to prevent one seeing the car coming distant a block away. The track was slippery; at that point it was down grade and the motorman was moving cautiously. The wagon came out of the alley, the horse going at a trot, aiming straight across the tracks, the driver and the plaintiff looking to the west. The motorman saw the wagon coming, and at once began ringing his gong, and when it seemed as if the driver intended to cross the north track in front of the car the motorman continued sounding the gong, hallowed at the driver, applied his brakes, reversed the power, turned on the sand, and used all the means at hand to stop the car and had brought it almost to a stop when the collision occurred.

The case was submitted to the jury, the verdict was for the defendant, the court sustained the plaintiff's motion for a new trial on the ground that it had

erred in giving certain instructions for defendant. Defendant appeals.

If it should be conceded that the defendant was guilty of negligence in either of the three particulars first specified in the petition, still the plaintiff would not be entitled to recover in consequence thereof, because her own negligence contributed to produce the result. It was her wagon, the driver was her servant, and his negligence is chargeable to her. The plaintiff and her driver both testified that they did not see the car that struck them until they were on the north track. The car was there in plain view to be seen by any one who would look and if they did not see it, it was because they did not use their eyes. There is no suggestion of an excuse in the record for their failure to see the car. The motorman saw the wagon as soon as it came out of the alley and he was in no better position to see the wagon than were the plaintiff and her driver to see the car. If the driver saw the car coming (and even in the face of his assertion to the contrary it is as probable under the circumstances that he did as that he did not) yet ventured to cross in such dangerous proximity to the car, it was failure to observe that degree of care that an ordinarily prudent person in his situation would have observed. If he did not see it, it was because he did not look, and the act of not seeing for that reason was as negligent as an act of seeing and not heeding. It is unnecessary to decide, under the circumstances of this case, whether the car or the wagon had the right-of-way, because if it should be conceded that the wagon had the right-of-way (which is not even contended) and that as soon as the motorman saw the wagon emerge from the alley and attempt to cross the street, he ought to have stopped his car, yet kept on in his course, still the driver of the wagon seeing the car coming (or shutting his eyes so he could not see) and knowing that it could not stop as quickly as the horse could, was guilty of negligence in driving

immediately in front of it or so close to it as to render a collision inevitable, or if not inevitable at least not improbable.

Counsel for respondent in their brief seem to rely more on the fourth specification of negligence in the petition than in three preceding, that is, that the motorman failed to stop the car "within a reasonable time after he saw or by the exercise of reasonable care might have seen the dangerous situation of the plaintiff."

The motorman saw the wagon when it first came out of the alley and saw the course the driver was aiming to take; he saw that the driver and the plaintiff had their faces turned to the west as they crossed the south track, and if the motorman drew any inference from that fact, the natural inference was that they were taking proper care, because the danger they were in while crossing the south track was from a car coming from the west and the motorman had a right to infer that when they had passed over the south track and were approaching and about to enter upon the north track they would, for the same reason, turn their faces to the east. Turning from the west to the east was but the occupation of a moment, a space of time too short to be measured. But whether he noticed how their faces were in fact turned and drew inferences therefrom or not, he saw the wagon and the driver and the course they were taking and he had the right to presume that the driver would use his senses. Even though he saw the horse approach close to the north track, yet if he still presumed that the driver would exercise the care that a man of ordinary prudence and common sense in his situation would exercise and stop until the car would pass, we can not say with certainty that he was guilty of negligence in acting on that presumption. And even if it could be said that under those circumstances a question, at least, of negligence arises which as a question of fact ought to be submitted

to the jury, still we can not say that it is a question of such gross negligence or reckless or wanton conduct as justifies the court in submitting to the jury to say whether or not the plaintiff ought to recover in spite of her own negligence. It requires more than the showing of a mere possibility that the accident might have been avoided in order to bring a case within the humanitarian doctrine announced in Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678. If it be conceded that the plaintiff's evidence tends to show that the defendant was guilty of any negligence at all, it is the utmost that can be claimed for it, while it shows the negligence of her driver very much more conspicuously. Though the street may have been crowded, yet there was nothing to prevent him from stopping until the car could pass. Even the horse showed a more intelligent appreciation of the situation than did the driver, because when it was attempted to urge him on to the north track in the face of the danger, he shied as far to the west as he could and thus saved himself from being struck.

An argument is built upon the estimates of witnesses as to the distance the car was from the horse when he got on the north track, and the distance in which it was possible to have stopped the car after the motorman saw the horse on that track, and the conclusion is drawn that the car was twenty or twenty-five feet distant and could have been stopped in fifteen feet. No witness measured any distance and no one pretended to speak with precision; under the excitement and confusion of the occurrences the so-called estimates were little, if any, better than guesses. So far as the plaintiff's estimate of the distance is concerned she showed by her answers when she was asked as to the distance she could see when elevated on the seat of the open wagon, that her faculty in measuring distances by the eye was not great.

Counsel for the plaintiff place reliance as to this point on the testimony of the motorman as helping out his case. But the motorman spoke with no precision on that subject, said in fact he could not do so, but he did speak with precision when he said that the moment he saw that the horse was coming on the north track he reversed the power, applied the brake, turned sand on the track, and stopped the car in the shortest time and space possible.

It is unnecessary to cite authorities to sustain the conclusion that under the plaintiff's own evidence in this case she was not entitled to recover. And since in no view of the case could a verdict for the plaintiff be sustained it is unnecessary to look at the instructions. Whether the instructions were right or wrong, the verdict was for the right party; it was the only verdict that the evidence warranted. The court therefore erred in granting a new trial. The judgment granting a new trial is reversed and the cause remanded with directions to the circuit court to overrule the motion for a new trial and enter judgment for the defendant on the verdict.

All concur, except *Robinson, J.,* absent.