ANNIE REYBURN v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, March 16, 1905.

1. **NEGLIGENCE: Trespasser: Avoiding Injury.** Though a pedestrian enters upon the fenced track of a railroad and uses it as a footpath and walks in it apparently heedless of the danger entailed, yet if the railroad's servants in charge of the locomotive see him and realize his danger, it then becomes their duty to exercise ordinary care to do what they can with the means at hand to avoid injuring him, and if they fail in that duty the railroad company is liable for his consequent injuries, notwithstanding his negligence.

2. ———: ———: ———: **Wantonness.** The engineer and fireman saw plaintiff's husband walking on the track 350 yards in front of the train with his back to them, that he did not look around, and that he manifested by his every movement that he was unmindful of the approaching train, yet without so much as lifting their hands to ring the bell or sound the whistle they ran over him. *Held*, that their conduct was wanton, and notwithstanding he was a trespasser and negligent the railroad company is liable.

3. ———: ———: **Wantonness.** It is not the law that because one is a trespasser on a railroad track the servants in charge of the trains owe him no duty to avoid injuring him.

4. ———: ———: **Failure to Testify.** Where two witnesses for plaintiff who had their attention fixed on the situation testify that the engineer and firemen on the locomotive which ran over her husband had their faces turned toward him and were looking in that direction, it is a fact to be considered in connection with their testimony that the defendant failed to call either the engineer or fireman as witnesses.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott,* Judge.

AFFIRMED.

*R. T. Railey* for appellant.

(1) Under the well-established law of this State, the plaintiff is not entitled to recover, even under the humanitarian rule, unless the evidence shows that the engineer and fireman actually saw deceased in peril before he was struck, and in time to have avoided the injury. Barker v. Railroad, 98 Mo. 50; Coatney v. Railroad, 151 Mo. 35; Davies v. Railroad, 159 Mo. 1; Tanner v. Railroad, 161 Mo. 497; Carrier v. Railroad, 175 Mo. 470. The foregoing principle is clearly recognized as being elementary law in this State.  Moore v. Railroad, 176 Mo. 528; Guyer v. Railroad, 174 Mo. 344; Van Bach v. Railroad, 171 Mo. 338; Feeback v. Railroad, 167 Mo. 206;  Hook v. Railroad, 162 Mo. 569; Sharp v. Railroad, 161 Mo. 214; Holwerson v. Railroad, 157 Mo. 216; Peterson v. Railroad, 156 Mo. 552; Kreis v. Railroad, 148 Mo. 321; Culbertson v. Railroad, 140 Mo. 64; Vogg v. Railroad, 138 Mo. 180; Sinclair v. Railroad, 133 Mo. 233; Watson v. Railroad, 133 Mo. 246; Loring v. Railroad, 128 Mo. 360; Maxey v. Railroad, 113 Mo. 1; Boyd v. Railroad, 105 Mo. 371; Powell v. Railroad, 76 Mo. 80; Purl v. Railroad, 72 Mo. 168. "The fact that no signal was given tends to show that the deceased was not seen by the engineer, in the absence of any other evidence." The law presumes, until the contrary appears, that every man performs

his duty. *Omnia praesumuntur rite et solemniter'esse acta.* Co. Litt., 6b, 332; 1 Phil., Ev., 604, sec. 10; State ex rel. v. Bank, 120 Mo. 169; Yarnell v. Railroad, 113 Mo. 579; State ex rel. v. Williams, 99 Mo. 302; Mathias v. O'Niel, 94 Mo. 528; Hammond v. Gordon, 93 Mo. 226; Lenox v. Harrison, 88 Mo. 491; Bush v. White, 85 Mo. 356; Henry v. Dulle, 74 Mo. 451; Long v. Company, 68 Mo. 431. (2) Where the injury occurs in the country, outside of the corporate limits, and where the railroad track is fenced and appropriate cattle guards placed, the engineer is not bound to be on the lookout for trespassers, and in the operation of his train has the right to assume that the track is clear, and to run his train accordingly. Carrier v. Railroad, 175 Mo. 481; Barker v. Railroad, 98 Mo. 53; Feeback v. Railroad, 167 Mo. 215. We know of no case in this State or elsewhere, in respect to a trespasser, under such circumstances, where it has been held sufficient to warrant a recovery—when it is necessary to show wanton, willful or reckless conduct—unless it appears affirmatively that the engineer actually saw deceased, as charged in petition, in peril, in time to have avoided his injury. The opinion of Eddie Reyburn, in view of the physical facts, as to what the engineer and fireman saw, is no proof, but merely a conclusion. This court must declare the legal effect of the testimony, not from his opinion, but from the facts described in the case. Bartlett v. O'Donoghue, 72 Mo. 564; Nugent v. Milling Co., 131 Mo. 252; Ferguson v. Davidson, 147 Mo. 668; Epperson v. Company, 155 Mo. 383; Wilson v. Jackson, 167 Mo. 155; Rice v. Smith, 171 Mo. 336; Koons v. Railroad, 77 S. W. 761; State v. Kaufman, 45 Mo. App. 660. The opinion, therefore, of Eddie Reyburn, that the engineer and fireman saw his father was purely a matter of conjecture, and no verdict should be permitted to stand thereon. Peck v. Railroad, 31 Mo. App. 126; Perkins v. Railroad, 103 Mo. 58; O'Malley v. Railroad, 113 Mo. 325; Warner v. Railroad, 77 S. W.

70; Smart v. Kansas City, 91 Mo. App. 592; Wintuska's
Admr. v. Railroad, 20 S. W. 820; Megow v. Railroad,
56 N. W. 1099.

*Chas. E. Morrow* and *O. L. Houts* for respondent.

(1)    Plaintiff proved by the undisputed testimony
that defendant's engineer and fireman saw her hus-
band, the deceased, in a place of peril upon the track
while they ran the train 350 yards certain, and 970
yards in all human probability, and in ample time, by
the exercise of ordinary care, to have sounded the
whistle and saved his life; that they failed to exercise
such care and ran deceased down and killed him with-
out sounding the whistle or giving him any warning.
On that showing, although deceased was a trespasser,
plaintiff had a right to go to a jury under the human-
itarian doctrine, and the demurrer to the evidence was
properly overruled.   Hinzeman v. Railroad, 81 S. W.
1134; Klockenbrink v. Railroad, 172 Mo. 678; Morgan
v. Railroad, 159 Mo. 262; Sinclair v. Railroad, 133 Mo.
233; Reardon v. Railroad, 114 Mo. 384; Rine v. Rail-
road, 100 Mo. 228; Adams v. Railroad, 74 Mo. 553;
Gunther v. Railroad, 95 Mo. 286, 108 Mo. 18.   This doc-
trine has been recognized and followed at almost every
term of this court for a great many years; since the
Adams and Rine cases at any rate.   It is the doctrine
of the Supreme Court of the United States.   It is the
settled law of this State and every other enlightened
jurisdiction.   Ives v. Railroad, 144 U. S. 408; Inland,
etc., Co. v. Tolson, 139 U. S. 551.   It is the English and
common law doctrine.   Bradley v. Railroad, 1 Mo. App.
744; Pollock on Torts (5 Ed.), 444-446.   (2)   From the
fact that the fireman and engineer were adults, had
good visions and were in a position to see the deceased
moving along on the middle of the track, the jurors
could directly and fairly conclude (if they saw proper
to do it) that the engineer and fireman did see the de-

ceased.    Rine v. Railroad, 100 Mo. 234; Sinclair v.
Railroad, 133 Mo. 241.   In this case "the relative posi-
tion of the deceased to the track at the time of the in-
jury," was clearly shown.   He was walking down the
middle of the track, facing west.   Two witnesses, whose
testimony was not contradicted, testified to having seen
the engineer and fireman in the cab, looking in the di-
rection in which the deceased was travelling.   (3)  De-
fendant insists that, inasmuch as no signals were given
before deceased was killed, and inasmuch as men are
presumed to do their duty, therefore, the jury should
have presumed that the fireman and engineer did not
see deceased in peril.   That is, with other presump-
tions, only indulged in the absence of evidence, and not
in the teeth of evidence.   The presumption could not
be indulged in this case because the proof was that the
fireman and engineer did see the deceased in peril.
"The fact that no signals were given tends to show that
the deceased was not seen by the engineer, in the ab-
sence of other evidence."  Ham v. Barrett, 28 Mo. 388;
Grover's Admr. v. Duhle, 19 Mo. 360; Moberly v. Rail-
road, 98 Mo. 183; Myer v. Kansas City, 108 Mo. 480;
Ropp v. Railroad, 106 Mo. 428; Lynch v. Railroad, 112
Mo. 433; Ehrhart v. Deitrick, 118 Mo. 430; Bluedorn
v. Railroad, 121 Mo. 270; Schepers v. Railroad, 126 Mo.
665; Weller v. Railroad, 120 Mo. 635; Bailey v. Rail-
road, 152 Mo. 449.

VALLIANT, J.—Plaintiff recovered judgment for
$5,000 for the killing of her husband by a locomotive
drawing a passenger train on defendant's railroad.
Defendant appeals.

The petition states, in substance, that in the after-
noon of February 22, 1902, plaintiff's husband, Joseph
R. Reyburn, was walking west in the track of defend-
ant's railroad about half a mile east of the town of
Kingsville when a regular passenger train of defend-
ant approached him from the rear, also going west, ran

over him and killed him; that it was on a portion of defendant's track commonly used by the public for a foot path; that the servants of the defendant operating the train saw him and saw that he was in a position of peril and could, after so seeing him, have averted the accident by the exercise of ordinary care, with the means at hand, but negligently failed to do so. In addition to the statement that the defendant's servants actually saw the deceased and saw his peril in time to have saved him is also the statement that by the exercise of ordinary care they would have seen him, etc., but the case was tried on the theory that they did see him.

The testimony on the part of the plaintiff tended to prove as follows:

The train going west toward Kingsville passes over a rise at what is called Manly's crossing, which, by measurement is 970 yards, or 2910 feet, east of the point where Reyburn was struck. The track is straight and the view unobstructed from that point and it is slightly down grade. Reyburn and his son, a boy sixteen years old, were driving towards Kingsville in a wagon loaded with straw, in the public road which runs parallel with the railroad just outside the fence which encloses the right-of-way. Reyburn got out of the wagon, went through the railroad fence, and walked on in the railroad track, leaving his son to drive the wagon. As the road was muddy the wagon moved slowly and Reyburn got ahead of it some three hundred yards or more. There was another man, Burgin, walking on the track 200 yards behind Reyburn. The train in question whistled for the Manly crossing, which attracted Burgin's attention; he looked back when it came over the rise, and when it approached him he got off the track. He testified that the train was between a quarter and a half mile east of him when the whistle sounded, and that there was no other sound of whistle or bell until after the man was struck; he also testified

that it was down grade, that the train came without puffing steam and not much noise. The boy testified that when the train approached Burgin the bell was sounded. Reyburn was a little deaf, but he could hear conversation in ordinary tone, also the cackling of fowls, and could hear the whistle and bell of a locomotive and puffing of a train.

This was a regular passenger train on its regular schedule time. The deceased lived near the railroad and was acquainted with the regular trains and their time.

There were only four eye-witnesses to the tragedy, the plaintiff's son, and Burgin, the engineer and the fireman; the first two were called as witnesses for the plaintiff, the last two were not called by either side.

The testimony of the son was to the effect that when the train was passing him he saw the engineer and fireman and they then were looking at each other and talking, but immediately after passing him they turned their faces west in the direction in which the train was running; at that time his father was 350 yards in front of the engine, in plain view, walking west, facing in that direction; after the engineer and fireman turned their faces to the west witness did not see their faces because it was the backs of their heads he saw, and on cross-examination he said he did not see their eyes, he only knew that their faces were to the west because the back of their heads were the other way; that when the train approached Burgin the bell was sounded and he got off; the train then went on without sounding bell or whistle until it overtook and killed his father; after Burgin got off of the track witness saw that his father was not observing the coming train and he was anxious about it, did not shout to him because he was too far away to be heard, but expected the whistle to call his father's attention, but the whistle was not sounded.

Burgin's testimony on this point was substantially

the same as that of the plaintiff's son, except on the point of ringing the bell as the train approached him, he did not hear a bell. He saw Reyburn walking in the track 200 yeards ahead of him, and after he stepped off the track he saw Reyburn continue walking facing west until the train overtook him and killed him. As the train passed witness the faces of the engineer and fireman were turned to the west, after that he could not see their faces but the backs of their heads were toward him; he could not then see their eyes. The train came fast, without sound of whistle or bell, and as it was down grade made not much noise. As soon as the engine struck Reyburn the whistle sounded and the train was backed and the body was taken aboard and carried on to town. Plaintiff offered testimony to prove that the track at that point was used by the public generally for a foot path, but defendant objected to the evidence and the court sustained the objection.

There were other witnesses as to distances, condition of track, etc., and as to coroner's inquest.

At the close of plaintiff's evidence defendant asked an instruction to the effect that the plaintiff was not entitled to recover, which instruction was refused and exception was taken.

Defendant offered no evidence and asked no instructions.

The case was given to the jury under the following instruction at the request of the plaintiff:

"1. The court instructs the jury that if they believe from the evidence that Joseph R. Reyburn was killed by the train of the defendant mentioned in evidence, that at the time he was killed he was the husband of the plaintiff, that while walking upon defendant's railroad track he became in imminent peril of being struck by defendant's said train, that defendant's employees in charge of said train became aware of his peril of being struck in time to have enabled them, by the exercise of ordinary care, to have sounded the

whistle and to have averted the injury to the said Reyburn, that said employees failed to exercise said care and sound said whistle in time to have averted said injury, that by reason of such failure to exercise such ordinary care, the said whistle was not sounded, and the said Reyburn was struck and killed by said train, then the jury must find for the plaintiff, though the jury may find and believe from the evidence that the said deceased, Reyburn, was guilty of negligence in walking upon the defendant's right-of-way and track.

"Ordinary care as used in this instruction is such care as an ordinarily prudent person would exercise under the circumstances detailed in evidence. And negligence is a failure to exercise ordinary care.

"2. The court instructs the jury that if you find for the plaintiff you will assess her damages at the sum of $5,000."

The chief contention of appellant is that the demurrer to the evidence should have been sustained. The argument is that the accident occurred on a part of the railroad which the law required to be fenced, that it was fenced, that plaintiff's husband was a trespasser on the track and the defendant owed him no duty.

If we correctly understand the argument of appellant on this point it leads to the conclusion that under the circumstances in which the engineer found the man in this case on the track he owed him no duty at all for a failure in which the defendant would be liable, not even the small service of lifting his hand to sound the whistle in order to save the trespasser's life, for that is the extent of the duty that the humanitarian doctrine required in this case, and if as is now contended that doctrine is wrong then the position taken by appellant is correct—there was absolutely no duty.

It has long been the doctrine of this court that though a man voluntarily adopts the dangerous track of a railroad for his footpath and walks in it appar-

ently heedless of the danger entailed, yet if the servants in charge of the locomotive see him and realize his danger (or under some circumstances when they ought to see him if they do not) it then becomes their duty to exercise ordinary care to do what they can with the means then at hand to avoid injuring him, and if they fail in that duty the railroad company is liable notwithstanding the negligence of the injured man.  Some of the cases in which this doctrine is declared are Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678; Hinzeman v. Railroad, 182 Mo. 611.

We have said in those cases and in the cases therein referred to all that we deem necessary to say in defense of that doctrine.  If what this court has said in former cases has failed to reconcile appellant to the justness of this doctrine probably nothing we could now say would be more persuasive.  The doctrine is approved by the Supreme Court of the United States and that court says it is supported by high authority both English and American.  [Coasting Co. v. Tolson, 139 U. S. 551.]

The facts in this case are more nearly like those in Morgan v. Railroad, above cited, than any that has come before us since the decision in that case, but there is this difference, in the Morgan case the engineer and fireman did not see the man they killed; they had voluntarily placed themselves in positions from which they could not see the track ahead of them, but here the engineer and fireman saw the man, saw that he was walking with his back towards them never once looking around, manifesting by his every movement that he was unmindful of the approaching train, yet without so much as even lifting their hands to touch the bell or whistle they ran on him and killed him.

It is seriously argued that there was no evidence that they saw him, because the witnesses could not see their faces or their eyes, could see only the backs of

their heads. After the train passed the witnesses they of course could not see the faces of the engineer and fireman when their faces were turned to the front, but when they saw the backs of their heads they were not reckless in swearing that their faces were turned the other way; they do not deserve to be called perjurers on that account. Their attention was fixed on the situation, particularly that of the boy who saw his father in peril and anxiously listened for the whistle to sound to give him the warning that would have saved his life. What these two witnesses saw, the engineer and fireman could not help but see unless they purposely shut their eyes. And it is a fact to be considered in this connection that the defendant failed to call either the engineer or fireman as a witness.

The instructions under which the case was submitted to the jury fairly present the law under the humanitarian doctrine as it has often been declared by this court, and the verdict is sustained by the evidence. We find no error in the record.

The judgment is affirmed.

All concur, except *Marshall, J.*, not sitting.