## ANNA WHITE, Respondent, v. MISSOURI PACIFIC RAILWAY CO., Appellant.

### Kansas City Court of Appeals, December 4, 1911.

1. **RAILROADS: Negligence: Humanitarian Rule: Asleep on Track: Conjecture and Possibilities.** A brakeman was sent east down the track from a small station to flag an expected west-bound passenger train. He went down the road perhaps a mile, and sat down on the track and fell asleep. An east-bound freight train was running rapidly to get in on a siding further on, in order to avoid the passenger train. In rounding a curve the engineer saw the sleeping brakeman only 275 feet away. He instantly shut off the steam, put on the air brakes and opened the sand boxes. He could not stop and the engine struck and killed the brakeman. In an action by his widow, founded on the humanitarian rule, it was *held* that the evidence of negligence on the part of the engineer after seeing the brakeman's peril, only gave room for conjecture and possibilities and that these are not sufficient.

2. ―――: ―――: **Evidence: Flagman in Two Places: Contradiction.** Evidence of a flagman having been seen in the morning, six hours before an accident in which he was killed, at a certain place on the track, and that his cap was seen next day after the accident at a certain place, does not contradict the evidence of the engineer that he was asleep at a certain other place a short distance away.

3. ———: ———: Emergency: Mistake: Fault. Where an engineer on a rapidly running train comes round a curve and suddenly sees a flagman asleep upon the track two hundred and seventy-five feet away, he will not be held guilty of negligence in not sounding the whistle if he immediately shuts off steam, sets the brakes and opens the sand boxes; although to have sounded the whistle would have been the wisest course and would have saved the man's life. In an emergency brought about by the fault of another, a mistake or error of judgment is not negligence.

Appeal from Cole Circuit Court.—*Hon. Wm. H. Martin*, Judge.

REVERSED.

*C. D. Corum* for appellant.

The demurrer to the evidence offered by the defendant at the close of the evidence should have been sustained. Magee v. Railroad, 214 Mo. 542; King v. Railroad, 211 Mo. 14; Hawkins v. Railroad, 135 Mo. App. 527; Matz v. Railroad, 127 Mo. 298; Day v. Railroad, 140 Mo. App. 469; Markowitz v. Railroad, 186 Mo. 359; Young v. Railroad, 227 Mo. 331; Degonia v. Railroad, 224 Mo. 564; Sinclair v. Railroad, 133 Mo. 244; Van Dyke v. Railroad; Matthews v. Metropolitan Ry., 137 S. W. 1004; Donahue v. Kelly, 181 Pa. St. 93; Brown v. French, 104 Pa. St. 64; Floyd v. Railroad, 162 Pa. 29; Sekerek v. Jeuett, 153 Pa. St. 117.

*A. W. Walker* and *Silver & Dumm* for respondent.

The demurrer to the evidence offered by plaintiff was properly overruled. Plaintiff's evidence was substantial and made a clear case for the jury. Hinzeman v. Railroad, 199 Mo. 56; Atkins v. Railroad, 152 Mo. App. 291; Williamson v. Railroad, 139 Mo. App. 481 (same case, second appeal), 137 S. W. 30; Morgan

v. Railroad, 159 Mo. 292; Murphy v. Railroad, 228 Mo. 56; Eppstein v. Railroad, 197 Mo. 720; Reyburn v. Railroad, 187 Mo. 565.

ELLISON, J.—Plaintiff's deceased husband was an employee of the defendant as a brakeman on a freight train. He was killed by one of defendant's engines while out as a flagman, and plaintiff, charging his death to defendant's negligence, brought this action and recovered judgment in the trial court.

Deceased and his crew had been ordered to assist in clearing away a wreck at a station called Etlah. This had been about accomplished when the conductor, who was at the station with deceased, ordered him to go eastwardly down the track to flag an expected west-bound passenger train. He started to his post. Shortly after this a local east-bound freight train came in from the west and stopped at Etlah, at near two o'clock p. m., when it was concluded that there was time to run east about three miles to another small station and get in on a side track before the expected west-bound passenger train would get there. The train then started up for that short run at a rapid speed, stated to have been at the rate of thirty-five or forty miles per hour. The bluffs come close to the river and the railway track follows them, thereby making several curves. This local freight had not gone far in its eastwardly run until it came upon deceased sitting asleep on one of the rails of the track, with his head inclining forward on his breast, his legs inside the rails, and his flag across his arm, rolled up.

Immediately on seeing him the engineer shut off steam, set the air brakes and opened the sand boxes, and by the time he had done that the engine was upon deceased and he was injured so that he shortly died. The train came to a stop three hundred feet further on. No one saw the accident but the en-

gineer and he fixes the distance positively between the point of the bluffs where he could first see deceased, and where the latter sat in the track, at two hundred and seventy-five feet. He took an engine and some person to help him and went to the place. He put a man on the rail where deceased sat and then went with his engine back to the point where the man could be first seen and this distance was measured.

Plaintiff also had a measurement taken, but without the aid of an engine, which was stated to be three hundred and twenty-five feet. But this is well accounted for by the engineer showing that a seat up ten or twelve feet in the cab of the engine, where he sat, would be more obstructed on account of the formation of the bluff than would a view from the ground. In other words, that one could see further along the track from the ground than he could from the engine cab.

Then plaintiff relies upon another part of the evidence as tending to contradict the engineer on distances. To show that deceased was not so far down the track, by several hundred feet, as the engineer placed him, a section foreman was introduced by plaintiff, who stated that at eight o'clock that morning (near six hours before the accident occurred), he had seen deceased flagging at a certain place, and that the next morning thereafter he saw a cap at the same place, close by the track, which he thought, indeed felt sure, was the one he saw deceased wearing the morning before. This place was located by the witness in such way as to be wholly unintelligible. He attempted to make known where it was by a milepost, a mileboard, a whistling board, a whistling post, and a telegraph pole with the miles marked on it, and these he used interchangeably until, as best we can gather from reading it, the court, counsel and the witness himself became confused with his tangling statements. The mileboard and the milepost

and the whistling board seem to be different objects. The *mile* posts, he said, were 150 feet apart.

After the witness mixed matters past our comprehension, viewing them in print, the trial court suggested to him that he could not understand, and questions were then put to make things clearer. So it was asked him: "What is the distance between the milepost and the whistling board?" At this point (to show how he was understood), a lawyer broke in with the statement: "He says about seven hundred feet." Another lawyer said: "That is not what I understood him to say." Yet another adds that: "He said five or six telegraph posts." And then the court stated: "I think he is confused." Then this follows:

"Q. That is, it is a half mile between the whistling post— A. And the whistling board.

"Q. That is, in other words, the west pole? A. Yes, sir.

"Q. And going on east, why the first you come to is the whistling board? A. The whistling board.

"Q. The whistling board or whistling post? A. The whistling board,—the mileboard.

By the Court: "That is what you call the mileboard? A. The mileboard; yes, sir.

"Q. Now, then, you come to that first? A. Going east you come to the milepost 70, first.

"Q. That is what I say, going east you come to milepost 70? A. Yes, sir.

"Q. And the next thing you come to is the whistling board. A. The mileboard; yes, sir.

"Q. The mileboard?"

At this point another lawyer, silent up to this part of the examination, stated what the witness meant. Then the witness was asked, "Now with reference to that (the mileboard) where did you find that cap? A. Well, about something like, I think, about five or six poles, or seven or something like

that." This, he said, was about seven hundred feet
west of the mileboard. Upon such confused state-
ments it is sought to base measurements of distances
in which the engineer could have seen deceased on
the track, and to contradict the engineer.

But if we allow to this witness's testimony the
understanding placed upon it by plaintiff's counsel
in argument, it is this: That deceased was seen on
the track in the morning about six hours before the
accident, engaged in flagging; and nearby this place
the witness found a cap the next day which he thought
was the one worn by deceased when he saw him the
day before. How does that show, or reasonably tend
to show, that deceased was not at another part of the
track, a short distance away, at another time, where
the definite testimony of the engineer placed him?
It is an attempt by mere conjecture to overturn def-
inite and positive testimony given by persons who
had affirmative knowledge. We think none of it is
inconsistent with the evidence plaintiff sought to
combat.

Plaintiff, however, does not base her case alone
upon the testimony of the foregoing character. It is
insisted that the engineer should have sounded the
whistle immediately upon seeing deceased, instead of
attempting to stop; and much speculation is indulged
in as to there being time for deceased to be aroused
from his sleep and to get off the track before being
struck. Measurements, to the foot, and time, to the
half second, are stated and many conjectures and pos-
sibilities as to what deceased might have done, are
put forward to fasten guilt of negligence upon the
engineer. The Supreme Court calls such character
of evidence "the fog of conjecture" and not "a basis
of fact." [McGee v. Ry. Co., 214 Mo. 530.] It must
be borne in mind that this is a case where the negli-
gence of the deceased is conceded and where the only

159 App.— 3

o

ground of recovery may be called the lack of humanity on the part of the engineer. In such case the Supreme Court has said that: "It requires more than the showing of a mere possibility that the accident might have been avoided in order to bring a case within the humanitarian doctrine." [Markowitz v. Ry. Co., 186 Mo. 350; see also Degonia v. Ry. Co., 224 Mo. 564, and Young v. Ry. Co., 227 Mo. 307.]

As he, at rapid speed, rounded the curves following the formation of the adjoining bluffs, the engineer came in view of a man on the track, with his head down on his breast, only 275 feet away. What was he to do? If he had time for reflection at all, he might have thought it impossible to save him, but the instinct of humanity was alive and he instantly began to *try* to stop. His effort was of no avail and he did not get the train down to a stand until three hundred feet beyond the point of collision.

Now if we permit ourselves to conjecture and say, in plaintiff's behalf, that if the engineer had sounded the whistle instead of attempting to stop, there is a possibility that deceased may have been awakened, brought to a sense of his danger and got off the track in time, and that therefore the engineer made a mistake, it will not aid plaintiff's case. The law is, above all things, reasonable, and it is formed in recognition of the frailty and fallibility of human judgment, and it refuses to make culpable negligence out of error of judgment in an emergency caused by the fault of the other party. There was a case in this court where a man ran to get into a moving street car as it was going upon a viaduct. He caught the railing and was being carried toward an upright that would knock him off. The conductor saw his peril and instead of signaling to stop by pulling the bell cord, he attempted to help the man in his struggle to get aboard. He failed and the man fell to the street below and was killed. We held that the conductor could not be

blamed, even though a signal to stop might have saved the man; Judge JOHNSON saying that: "Mere error of judgment committed under stress of exciting and imminent danger alone is no proof of negligence." [Mathews v. St. Ry. Co., 156 Mo. App. 715.] And that statement is supported in a number of interesting cases in Pennsylvania, which have been cited, as well as in the federal courts. [Brown v. French, 104 Pa. St. 604; Sekerak v. Jutte, 153 Pa. St. 117; Floyd v. Ry. Co., 162 Pa. St. 29; Macham v. City of New York, 35 Fed. 604; Fulton v. Holmes, 122 Fed. 406.] In the first of the two last cases it is said that to be injudicious in an emergency brought about by the fault of the complaining party, is not negligence. And in the last one, it is said that in such circumstances, to be unwise is not a fault.

After careful consideration, we conclude that no case was made, and hence reverse the judgment. All concur.