AUGUSTA FELDMAN, Respondent, v. ST. LOUIS,
IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY, Appellant.

St. Louis Court of Appeals, June 24, 1913.

1. **RAILROADS: Established User of Track by Pedestrians: Duty of Railroad Company.** Where there is an established user of a railroad track which is known to the railroad company, an obligation rests upon the company to exercise ordinary care in keeping a lookout for pedestrians thereat.

2. **NEGLIGENCE: Last Chance Doctrine: Rationale.** The last chance doctrine proceeds on the hypothesis that the injured person was negligent in the first instance and the defendant was negligent thereafter; the prior negligence of the injured person being regarded as remote in the chain of causation and the subsequent negligence of defendant being utilized as the proximate cause of the injury.

3. **RAILROADS: Injury to Pedestrian: Last Chance Doctrine: Failure to Give Signal.** Where a pedestrian is injured by being struck by a railroad train at a place where it was the duty of the operatives to keep a lookout for pedestrians, a recovery may be had on the ground that the operatives of the train failed to ring the bell or sound the whistle so as to give the pedestrian warning of the approach of the train, notwithstanding he failed to exercise ordinary care for his own safety; following Reyburn v. Railroad, 187 Mo. 565.

4. **———: ———: ———: ———: Instructions.** Where, in an action for the death of a pedestrian who was struck by a railroad train, there was no evidence that decedent saw the train approaching, an instruction, requested by defendant, that the purpose of sounding the whistle and ringing the bell is to warn persons of the approach of a train, and if decedent saw or heard the train approaching, the fact that he did not hear the engine bell or whistle is immaterial, was properly refused because not sustained by the evidence.

5. **———: ———: ———: ———: ———.** In an action for the death of a pedestrian who was struck by a railroad train, an instruction, requested by defendant, that the purpose of sounding the whistle and ringing the bell is to warn persons of the approach of a train; and if decedent saw or heard the train approaching, the fact that he did not hear the engine bell or whistle is immaterial, was properly refused, for the reason that it failed to require a finding that decedent either saw or heard the train in time to have saved himself.

6. INSTRUCTIONS: Refusal: Not Based on Evidence. It is not error to refuse an instruction which requires a finding not supported by any evidence.

7. APPELLATE PRACTICE: Supreme Court: Controlling Decisions. Under Sec. 6 of the Amendment of 1884 to Art. VI of the Constitution, the Courts of Appeals are required to follow the last decision of the Supreme Court in point.

8. ————: Conflicting Decisions: Disposition of Case. Where a decision of the St. Louis Court of Appeals, which conforms to the decisions of the Supreme Court, is in conflict with the decision of the Kansas City Court of Appeals, the case must be certified to the Supreme Court for final determination.

Appeal from Jefferson Circuit Court.—Hon. *E. M. Dearing*, Judge.

AFFIRMED.    CAUSE CERTIFIED TO SUPREME COURT.

*R. T. Railey* and *N. A. Mozley* for appellant.

(1)    In voluntarily going upon the track and walking at a place where it was impossible for the engineer to see him until the train was so close upon him that it could not be stopped in time to avoid the injury, decedent was guilty of negligence that contributed to his death, and appellant's peremptory instructions should have been given on this ground.    Zumalt v. Railroad, 175 Mo. 311; Ayers v. Railroad, 190 Mo. 228; Porter v. Railroad, 199 Mo. 82; Carrier v. Railroad, 175 Mo. 470; Trigg v. Transit Co., 215 Mo. 521; Hafner v. Transit Co., 197 Mo. 196; White v. Railroad, 159 Mo. App. 508; Degonia v. Railroad, 224 Mo. 564; Burge v. Railroad, 148 S. W. 925:    (2)    Notwithstanding the place where deceased was injured was commonly used by shop employees of DeSoto, and some farmers, as a footway, appellant's engineer, in the operation of his train, had the right to assume that deceased, while so using it, was observing due care for his own safety and would step out of the way of danger in time to avoid injury.    And said engineer was not required to warn deceased of the approach of the train, or to slow or stop the same, until

he saw deceased was in a position of peril and oblivious to the impending danger. Reardon v. Railroad, 114 Mo. 405; Hyde v. Railroad, 110 Mo. 272; Veatch v. Railroad, 145 Mo. App. 232; Schmidt v. Railroad, 191 Mo. 215.

*E. C. Edgar* and *Byrns & Bean* for respondent.

(1) The court did not err in refusing to instruct the jury that plaintiff was not entitled to recover. Dutcher v. Railroad, 145 S. W. 63; Rayburn v. Railroad, 187 Mo. 565; Ahnefeld v. Railroad, 212 Mo. 281; Murphy v. Railroad, 228 Mo. 56; Epstein v. Railroad, 197 Mo. 737; Young v. Railroad, 227 Mo. 332. (2) Plaintiff's husband, Aber Feldman, was walking on the railroad track at the time he was struck by defendant's train at a place where the public had been invited to use the track for a footpath by the tacit consent and long acquiescence of the railroad company in permitting the open, known, free, continuous and extensive use thereof by footmen and the said company then owed a duty to said Aber Feldman to use ordinary care to protect him from being run down, maimed or killed. Frick v. Railroad, 75 Mo. 595; Williams v. Railroad, 96 Mo. 275; Morgan v. Railroad, 159 Mo. 262; Chamberlain v. Railroad, 133 Mo. 587; Epstein v. Railroad, 197 Mo. 737; Ahnefeld v. Railroad, 212 Mo. 281; Ervin v. Railroad, 139 S. W. 514; Roby v. Railroad, 140 S. W. 914. It was the duty of defendant's agents and servants in charge of its train to keep a lookout at the place where Feldman was struck for persons on the track, and if the engineer saw or knew, or by the exercise of ordinary care could have known, of his dangerous position on the track at this time in time to have by the exercise of ordinary care, warned said Feldman by sounding of alarm signals in time to have enabled Feldman to have avoided injury, and failed to do so, then the defendant is liable in this case. Everett v. Railroad, 214 Mo. 90; Reyburn v.

Railroad, 187 Mo. 574; Epstein v. Railroad, 197 Mo. 737.

NORTONI, J.—This is a suit under the wrongful death statute for damages accrued to plaintiff through the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

It appears that, while walking on defendant's railroad track, plaintiff's husband, Aber Feldman, was run upon and killed by its locomotive engine and train of cars. A recovery was allowed for plaintiff, though her husband was himself negligent, for the failure of defendant to warn him by sounding the whistle and ringing the bell, as if the ability to stop the train and avert the injury was wholly immaterial to her right to be compensated for the loss, and the principal question in the case pertains to this matter.

Plaintiff's husband was walking on defendant's railroad track about one mile north of the town of DeSoto at the time the train which occasioned his death came upon him from the rear, for it was going northward too. The record abounds with evidence tending to prove that the railroad at the place in question had long been used with the permission of defendant as a pathway for pedestrians going out of and into the town of DeSoto. DeSoto is a division point on the railroad and it appears that men employed in defendant's shops and in the shoe factory there constantly used the track as a passway to and from their work. Furthermore, the near-by farmers and their families used the track as a footway to and from the town. As a result of this long and continued user of defendant's track by the public, a well-worn pathway is established there, and the matter of such user and defendant's notice thereof is conceded on the record before us.

Plaintiff's husband was returning home from DeSoto and, as before said, walking northward on the track, when defendant's passenger train running from

thirty-five to forty miles an hour suddenly ran upon him from behind and inflicted the injuries from which he died. There is a considerable curve in the railroad at the point in question and on the east side of the main track defendant maintains several lead or switch tracks as well. This curve is said to be a two and one-half degree curve, and it appears beyond question that the view of defendant's locomotive engineer was necessarily obscured with respect to a good portion of the track ahead by a number of standard box cars standing upon the switch or lead track referred to. However, there is evidence in the record tending to prove that the engineer could, by exercising ordinary care in that behalf, have seen plaintiff's husband on the track before him for as much as 500 feet.

It was about 9:30 o'clock in the morning, and the view was open and clear, except for the curve in the track and the standard sized box cars standing on the switch as above mentioned. According to the evidence of a civil engineer who made measurements and testified at the instance of defendant, the view was open for about 430 feet. Defendant's locomotive engineer, Mattis, testified most favorably to plaintiff as follows: "When I saw him, I was between two and three hundred feet away." However, the testimony of this witness is generally to the effect that he could not see plaintiff's husband because the view was obstructed by the curve in the track and the box cars standing on the adjoining switch. The engineer says, speaking of plaintiff's husband, "He was ahead of the engine when I saw him coming around the corner of these box cars. I was looking out in the front, and of course I didn't expect anybody on the track. . . . He was walking along the track between the rails. He was walking along there with his head down . . . as near as I can remember the man was about 200 feet from me when I first saw him." Though the engineer says he first saw plaintiff's husband about 200 feet ahead of

the locomotive, it appears clear enough from a careful perusal of his testimony that he saw him at a distance of something more than 200 feet, but at precisely what distance is not stated.

It appears to be conceded that the train was running from thirty-five to forty-five miles an hour at the time. At any rate, the evidence concerning this matter is not controverted and the case seems to proceed on the assumption that such was the rate of speed. Though the evidence of defendant's locomotive engineer is, or affords a reasonable inference, that he saw plaintiff's husband something more than 200 feet ahead on the track, there is, as before stated, an abundance of proof that, by exercising ordinary care in that behalf, he could have seen decedent for about 500 feet. The train, besides the locomotive, consisted of eight cars, including baggage, passenger and Pullman coaches.

Plaintiff introduced no evidence tending to prove the distance in which a train of this character could be stopped at the *locus in quo,* but the locomotive engineer testified that he actually stopped it between 650 and 700 feet after the appliances were utilized for that purpose. He says, too, he invoked the emergency air brake immediately. At another place in his testimony, the engineer says, "When I saw him, I was between two and three hundred feet away. . . . I ran 250 feet after I struck the man." From this, the jury, no doubt, could infer that the train was actually stopped within about 500 feet. The conductor said the engineer made a good stop. Defendant's brakeman says, "I think the train ran about 500 and some feet after the air was applied until it finally stopped." So it appears that the evidence most favorable to plaintiff reveals the train could not have been stopped within less than 500 feet after the engineer went about the task of checking its speed. But the court did not require the jury to find that the train could have been stopped after the engineer either saw, or could have seen, plaintiff's hus-

band on the track, by exercising ordinary care to that end, and the recovery was allowed for the omission to sound an alarm, as by ringing the bell or sounding the whistle, when decedent's perilous situation was observed and he appeared to be oblivious of the danger. There can be no doubt that the evidence tends to prove. decedent was oblivious to the danger of the approaching train, for the engineer says he was walking along slowly with his head down, and from this it is to be inferred he was wrapped in thought and unobservant. At least six witnesses who were in the immediate neighborhood testified that no alarm, as by ringing the bell or sounding the whistle, was given. Two of these were young men at a culvert under the railroad track about 150 feet distant from the point of collision. Another witness and his son were grinding an ax in the yard of a near-by farmhouse, another was driving his team on the highway but a few hundred yards distant, and still another probably about a quarter of a mile from the point of collision; all of these say that no alarm whatever was given, as by ringing the bell or sounding the whistle. Moreover, these witnesses, or several of them at least, insist if such alarms had been given, they would have heard them.

For defendant, the locomotive engineer and the trainmen say positively that the whistle was sounded continuously from the point at which the engineer first observed plaintiff's husband on the track. The engineer says the whistle became caught and blew constantly until after the collision occurred.

By instruction given, the court authorized a recovery for plaintiff if it appeared defendant omitted to sound the alarm, as by ringing the bell or sounding the whistle, and her husband came to his death as a result of this omission of care. This, too, though the jury should find and believe that plaintiff's husband. was negligent with respect to his own safety at the

time. The principal instruction given by the court at the request of plaintiff is as follows:

"The court instructs the jury that if they believe and find from the evidence that Aber Feldman was on the 3d day of December, 1910, struck and killed by a locomotive engine, then being run on defendant's road by its servants and agents, and at the place where said Feldman was struck, many people, other than defendant's employees, at the time and had been for many years prior thereto accustomed to use said tracks as a footpath to and from the city of De Soto, and that said track had been used in this way continuously for many years, and defendant's agents and servants in charge of said engine could reasonably have expected to find persons on said track at that place on account of the frequent and continuous use thereof by footmen; and that said Aber Feldman was walking on said track and was not aware that said train was approaching him and was in a dangerous and perilous position and in imminent peril of being struck by defendant's engine, and defendant's agents and servants in charge of said engine, by the exercise or ordinary care, could have become aware of the perilous position of said Aber Feldman on defendant's track, if the jury believe and find he was in a perilous position, in time to have warned said Aber Feldman by sounding the whstle or ringing the bell, and to have averted striking said Aber Feldman, and that said agents and servants of defendant failed to exercise said care to warn said Aber Feldman, by sounding the whistle or ringing the bell, and that by reason of such failure to exercise such ordinary care said warning signals were not given and said Aber Feldman was struck and killed by said engine; and if the jury further believe and find from the evidence that plaintiff was the wife of said Aber Feldman at the time of his death and commenced this suit within six months thereafter, then you will find a verdict for plaintiff in a sum not less than two thousand dollars

nor more than ten thousand dollars, although you may further believe and find that said Aber Feldman was guilty of negligence in being upon defendant's track.

"By ordinary care, as used in this instruction, is meant, such care as an ordinary careful or prudent person or persons would exercise under the same or similar circumstances."

This instruction, or the substance of it, at least, has been heretofore approved by the Supreme Court in cases very similar to this, where an established user of the track appeared, as here, by the pedestrian. Of course, such user when known to the defendant, casts a duty commensurate therewith and requires the exercise of ordinary care as through watchfulness for persons walking on the track. In this view, the Supreme Court has heretofore permitted recoveries in such cases, when it appeared the omission of duty with respect to the injured party was the failure to ring the bell or sound the whistle, and without regard to the ability of defendant to stop the train and thus avert the collision. For a case sustaining this view of the law, see Reyburn v. Mo. Pac. R. Co., 187 Mo. 565, 86 S. W. 174. See, also, to the same effect, though involving injuries to a section man on the track, Hinzeman v. Mo. Pac. R. Co., 182 Mo. 611, 81 S. W. 1134; Hinzeman v. Mo. Pac. R. Co., 199 Mo. 56, 94 S. W. 973.

Were it not for the rule of decision reflected in those cases, we would condemn the instruction here, in authorizing a recovery, on the assumption of the negligence of decedent, for the mere failure to sound the bell or whistle. There can be no doubt that the obligation imposed by law upon defendant required the giving of an alarm to warn plaintiff's husband of the approach of the train and to the end of enabling him to reach a place of safety, if possible, but it would seem, too, that no recovery should be allowed, in cases such as this one as, for a failure with respect to this obligation, unless the decedent exercised ordinary care for

his own safety. The instruction, however, does not require the jury to find plaintiff's husband was exercising ordinary care on his part, but on the contrary authorizes a recovery for the mere failure to sound the whistle or bell, even though decedent was negligent. As we understand it, the last clear chance rule proceeds on the hypothesis that the injured party is negligent in the first instance and the defendant is negligent thereafter. The prior negligence of the injured party is regarded remote in the chain of causation and the subsequent negligence of defendant is utilized as the proximate cause of the injury in those cases where defendant might, through the exercise of ordinary care on its part, have averted the injury. In such cases, a recovery is allowed on the theory that, though the injured party was negligent, defendant, tort-feasor, is nevertheless responsible for the hurt, because it could, by exercising ordinary care, have *avoided the injury entirely*, and failed to do so. [See Klockenbrink v. St. Louis & M. River R. Co., 81 Mo. App. 351; s. c., 172 Mo. 678, 72 S. W. 900.] Indeed, as our Supreme Court has heretofore said, it requires more than the showing of a mere possibility that the accident might have been avoided in order to bring the case within this doctrine. [See Markowitz v. Met. St. R. Co., 186 Mo. 350, 359, 85 S. W. 351.] Here, the plaintiff was permitted to recover under the instruction given, though grave doubt appears as to whether it was possible for defendant to stop the train and avert the injury at all. The instruction authorizes a verdict for plaintiff on it appearing that defendant omitted to ring the bell or sound the whistle, even if plaintiff's husband was neglectful of the obligation to exercise ordinary care for his own safety, and this, too, where the probabilities of the case suggest that it was impossible to avert the calamity. The rule of the instruction above copied is, indeed, a harsh and severe one, for after admitting the negligence of decedent, it authorizes a recovery for his injury and

death even though defendant could not have avoided it. It cannot be said to a certainty that, had the bell and whistle been sounded, decedent would have escaped without hurt, for it may be that he was so engrossed in thought and oblivious of the approaching danger that such signals would not have aroused him. But it is unnecessary to further consider this question, for the Supreme Court cases first above cited appear to be in point and authorize a recovery for the mere failure to sound warning without reference to the ability to stop the train and avert the collision.

Defendant requested, and the court refused, the following instruction:

"The court further instructs the jury that the purpose of sounding the whistle and ringing the bell is to warn persons of the approach of a train, and if you find that the deceased saw or heard the train approaching, then the fact that he did not hear the engine bell or whistle is not material, and you are further instructed that if you find deceased saw the train approaching while he was on the track, then the fact that the bell was not rung and the whistle not sounded, if you find it to be a fact, should not be considered by the jury in this case."

It is urged the court erred in refusing this instruction, for the reason that, if plaintiff's husband either saw or heard the train approaching, then the failure to sound the alarm or bell or whistle may not be accepted as the proximate cause of his death. The argument, of course, inheres with much force, because one ought not to be permitted to recover for a failure to warn, when the fact about which warning is required is well known to the injured person. But be this as it may, it was proper to refuse the instruction as requested, for the reason that there was no evidence even tending to prove that decedent saw the train approaching. While the first part of the instruction as drafted employs the words "saw or heard" the train approaching in the

disjunctive, the latter part seems to compensate defendant's breach of duty to ring the bell or sound the whistle, if decedent "saw the train approaching." While there is an abundance in the case tending to prove decedent could have heard the train approaching (for others less favorably located than he did so), there is not a word suggesting that he saw it. Moreover, this instruction omits to require the jury to find that decedent either saw or heard the train in time to have saved himself, and for this alone it was properly refused.

Though duly considered, we do not deem the other arguments advanced of sufficient merit to warrant a reversal of the judgment.

In obedience to the rule of decision which appears to obtain in the Supreme Court and as reflected in the similar case of Reyburn above cited (see, also, the two Hinzeman cases), the judgment should be affirmed. But it is obvious this judgment is in conflict with that of the Kansas City Court of Appeals in the case of White v. Mo. Pac. R. Co., 159 Mo. App. 508, 141 S. W. 436. This being true, the case should be certified to the Supreme Court for final determination, in accordance with the constitutional mandate in that behalf provided.

It is therefore ordered that the judgment be affirmed and the cause certified to the Supreme Court for final determination, as we deem the judgment herein to be in conflict with that of the Kansas City Court of Appeals in the case of White v. Railroad, 159 Mo. App. 508, 141 S. W. 436.