68 U.S. 644 (1863)
1 Wall. 644
ROGERS
v.
THE MARSHAL.
Supreme Court of United States.

*648 Mr. Carpenter, for the plaintiff in error.
Mr. Lynde, contra.
*650 Mr. Justice DAVIS delivered the opinion of the court as follows:[*]
1. It is unquestionably true that a marshal is answerable for the misconduct of his deputy. If Fuller, the deputy, who served the writ of replevin in the case of Rogers v. Remington & Martin, and took the statutory bond, erased the name of the principal, without the direction of some one having authority, he violated a plain duty, and his principal can justly be held liable. The officers of the law, in the execution of process, are obliged to know the requirements of the law, and if they mistake them, whether through ignorance *651 or design, and any one is harmed by their error, they must respond in damages. But this case involves the extent of the power of an attorney to control and direct the execution of process, and the liability of the marshal where the default of his deputy has been induced by the conduct of the attorney.
The attorney is the agent of his client to conduct his suit to judgment, and to superintend the execution of final process. It is true that he cannot discharge the defendant from execution without the money is paid to him;[*] but his authority is complete to control the remedy which the law gives him to secure or collect the debt of his client.[] And if the client suffers by the ignorance or indiscretion of the attorney, the officer shall not be prejudiced, for the attorney may give such directions to the officer as will excuse him from his general duty.[] The attorney can give such general instructions to the officer as he may deem best calculated to advance the interests of his client, and if followed (erroneous though they be) they will bind his client and exonerate the officer.[§]
But it is said that Hopkins, the attorney, never instructed Fuller to erase Remington's name after the execution of the bond; which, being done without the knowledge and consent of the sureties, discharged them.
It is clear that no direct and positive instructions were given; for if there had been, in view of the power of the attorney to make the officer his agent, no controversy could have arisen. But the true question is this: Did Hopkins give such directions to Fuller as were calculated to mislead him, and must have induced the taking of the defective bonds? If he did, the marshal is not chargeable. After Fuller had taken the property in the replevin case he went to Hopkins *652 with a bond signed by Remington, the principal, and Martin or Keefe as sureties. Fuller swears that Hopkins said "he would not have Remington on the bond at all;" while the testimony of Hopkins is, that he "did not want" Remington's name on the bond. The two statements are not essentially different. Each would clearly enough convey the idea that Remington's name must not be on the bond. Hopkins excepted to the sufficiency of the surety, and told Fuller, that if he would procure Proudfit's name in addition to the name already on it, he would be satisfied. Remington was present at the interview, and took the bond away, and the following morning brought it to Fuller with Proudfit's name. Fuller told Remington that he could not receive the bond, because his name was on it. Remington said that he would take his name off, and Fuller replied that if he did so, it would be in accordance with the instructions received from Hopkins. Remington's name was then erased.
Now it is true that Hopkins did not direct Fuller to erase Remington's name from the bond, after it was executed, without the knowledge and consent of the sureties. But it should be remembered that Fuller was a ministerial officer and unacquainted with the rules which discharged sureties from their obligations, while Hopkins was supposed to be familiar with them. Fuller knew that Hopkins objected to the retention of Remington's name, while he was satisfied with Proudfit's in addition to that of Keefe, and, as the bond complied with the wishes of Hopkins, he had a reasonable right to infer that it was satisfactory. That Fuller acted under this belief is evident from the fact that he did not, until some length of time, say anything further to Hopkins; and there is nothing in the record to question the bonâ fides of either Fuller or Remington.
Hopkins had the right to refuse to direct Fuller at all in relation to the manner in which the bond should be executed, but he had no right to say anything which would necessarily tend to mislead him. If he had told Fuller, I will give you no instructions or advice; you are the officer, and must determine for yourself all questions that arise in *653 the performance of your duty, then Fuller, having been properly cautioned, could have no right to complain. And it is fair to infer that he would at once have sought legal advice, and thereby avoided the difficulties that occurred. But Hopkins chose another course, and what he said was well calculated to mislead Fuller. Any officer of common mind, and unacquainted with legal proceedings, would have concluded, from the conversation, that the bond would be satisfactory, if the additional surety was obtained and Remington's name left off; and it is clear, from Fuller's testimony, that Hopkins mistook the requirements of the Wisconsin code. Hopkins thought the New York and Wisconsin codes were alike, but afterwards ascertained his error, and that the Wisconsin code required the name of the principal on the bond, while the New York code did not. This admission relieves the case of all difficulty. It explains the reason of Hopkins in refusing the bond with the name of Remington on it, and accounts for the erasure which was made under the direction of the officer. If Hopkins chose to direct at all about the manner in which the bond should be executed, it was his duty, both to his client and the officer, to have taken the entire supervision of it. Having thought proper, as an attorney, to exercise his right to direct what names should go on the bond, he cannot, nor can his client, complain that the officer, in literally fulfilling his wishes in that regard, mistook the law and destroyed the efficacy of the instrument. When Fuller produced the bond with Remington's name on it, and Hopkins told him that he must have another surety, and would not have Remington's name on the bond, why did he not also inform him that the validity of the bond required that no erasures should be made after it was signed? This principle of law he doubtless well knew, and it is reasonable to infer that Fuller was in ignorance of it. The direction which Hopkins did give, and his failure to direct further, caused the loss which followed, and his client should suffer, and not the marshal.
These views are decisive of this case. The court charged the jury that it was their province to determine whether the *654 erasure was made "in consequence of the interference of Hopkins, the attorney," and the charge was right. It would have been better to have used the words "direction" or "instruction" instead of "interference," but, applying the evidence in the case, it is manifest that the jury rightfully interpreted the charge. A nice criticism of words will not be indulged when the meaning of the instruction is plain and obvious, and cannot mislead the jury.
2. But it is said that if the court was right in one proposition, it erred in submitting others to the jury.
This is true, but the plaintiffs in error cannot avail themselves of their exception, which was general and not specific. In Johnston v. Jones[*] this court say, "It is well settled that if a series of propositions be embodied in instructions, and the instructions are excepted to in mass, if any one of the propositions be correct, the exception must be overruled."
3. It is urged that the court was in error in permitting the defendants to ask the witness (Fuller) what Hopkins said about the bond after Fuller had accepted it and given an order for the lumber. The exception is to the question, and not the answer. The question was pertinent and proper. If Fuller had deviated from the strict line of his duty, yet if Hopkins adopted what was done, his client cannot hold the marshal responsible.[] And if Hopkins, after being informed of the circumstances under which Fuller took the bond, assented to it, his client is concluded.[] It was surely important, then, to ascertain whether that assent was given. The answer to the question, even if improper testimony, cannot be complained of here, because no exception was taken to it in the court below. The answer, however, could not have affected the verdict, and it is not necessary to discuss its pertinency. On the whole, we find no error in the record, and are not disposed to disturb the finding of the jury.
JUDGMENT AFFIRMED WITH COSTS.
NOTES
[*] Mr. Chief Justice Taney, and Messrs. Justices Wayne, Grier, and Field, had not been present at the argument.
[*] Jackson v. Bartlett, 8 Johnson, 361.
[] Jenney v. Delesdernier, 20 Maine, 183; Kimball & Company v. Perry, 15 Vermont, 414.
[] Walters v. Sykes, 22 Wendell, 568.
[§] Crowder v. Long, 8 Barnewall & Creswell, 605; Gorham v. Gale, 7 Cowen, 739.
[*] 1 Black, 220.
[] Corning & Horner v. Southland, Sheriff, 3 Hill, 552.
[] Stuart v. Whitaker, 2 Carrington & Payne, 100; Boynon v. Garrat, 1 Id., 154.