## THE GEORGIA RAILROAD vs. CARR.

1. In order to obtain a reversal on the ground that the verdict is contrary to evidence, it must appear that it is without evidence to support it. Where it was shown that an injury was caused by the running of the cars of a railroad, and the evidence for the plaintiff did not rebut the presumption arising against the company, and the defendant introduced no evidence, the verdict for the plaintiff will not be set aside.

2. While a railroad company has the right to make all the noises incident to the movement and working of its engines, and to give

the usual and proper signals of danger, as the sounding of whistles and ringing of bells, and while it will not be liable for injuries occasioned by horses driven upon the highway taking fright at such noises, if it exercised the right in a lawful and reasonable manner, yet, when approaching or running alongside public streets or thoroughfares, it is the duty of the company to so operate its cars as not unnecessarily to interfere with the rights of individuals traveling such streets or thoroughfares by other modes of travel, or to endanger such travel by unnecessary noises, frightening horses, and for damages resulting from a breach of such duty the company would be liable.

3. Within the corporate limits of the cities, towns and villages of this state, it is not lawful for railroad companies, as their trains approach crossings or public roads, to blow their whistles, but it is the duty of the engineer to signal their approach to such crossings or public roads by toiling the bell of the locomotive.

(*a*.) If the whistle of a locomotive was unlawfully blown in approaching a public crossing or street in a city, and a horse was thereby frightened, and injury occurred, the railroad would be liable in damages,

February 7, 1885.

Railroads. Damages. Negligence. Streets. Roads and Bridges. Municipal Corporations. Before Judge RONEY. Richmond Superior Court. April Term, 1884.

Reported in the decision.

Jos. B. CUMMING, for plaintiff in error.

FOSTER & LAMAR, for defendant.

JACKSON, Chief Justice.

Carr sued the Georgia Railroad and Banking Company for damages, in that, by its negligence in blowing its whistle unlawfully and unnecessarily within the limits of the city of Augusta, it caused the horse, drawing a wagon in which plaintiff was seated, to run away and badly injure and cripple him.

The jury found seventeen hundred dollars for the plaintiff, and the railroad company being denied a new trial, excepted.

1. We do not think that the verdict is contrary to law because contrary to the evidence, which ground means, to be availing in this court, that the verdict is without evidence to support it. The defendant introduced no evidence and makes no complaint that the verdict is excessive. The presumption of law is—the fact that the injury to the plaintiff was caused by the running of the defendant's cars having been established—that the defendant's negligence caused it, and as it introduced no testimony of conductor or engineer or fireman or anybody else, to overcome that presumption, unless the plaintiff rebutted the presumption in his own favor, which the law gives him, by testimony introduced by himself, that presumption becomes conclusive, and the verdict is demanded, it being conceded that it is not excessive. Does the plaintiff's evidence rebut this presumption?

The facts disclosed are, that within the limits of the city of Augusta the train came dashing along at a speed of twelve miles an hour, and blew its whistle unnecessarily and continuously loud and shrill, and that this caused the horse to run away, and the unhappy accident, which badly hurt the plaintiff, to occur. These facts do not rebut that presumption.

They show further, that plaintiff was in a wagon with a young man, who gave him a seat, with a horse said by the young man to be gentle and not afraid of cars; that the young man got out, however, on the approach of the train, and stood at the horse's head, leaving the plaintiff in the wagon; and the testimony is that, but for the whistling and screaming of the engine, no harm would have been done, but when that occurred, the horse broke away, and came near running over the young man at his head. The fact that the plaintiff remained in the wagon when the driver got out may have been an act of negligence in the plaintiff, but it does not rebut negligence in the company's agents. Nor does it show that this negligence was the sole cause of the injury. It simply shows what might be contribu-

tory negligence.  Nor does it show that plaintiff, by ordinary care, could have avoided the consequences of defendant's negligence, because there was no danger, no consequence from the negligent blowing of the whistle, until it was blown, for the horse made no effort to run until that blowing, and then plaintiff could not possibly get out, for, in the language of the witnesses, all transpired in a moment—a second of time.*

Therefore, the presumption remains fixed, that the absence of diligence—the negligence which the presumption of law fixes on the company, unless rebutted—is not rebutted, but stands fixed.  So far from rebutting that negligence, affirms it.  A gentle horse, accustomed to railway trains, which women often drove, runs away on account of an unnecessary blowing of defendant's whistle within the limits of Augusta, and, notwithstanding the driver stands at the horse's head, he runs away with the wagon and badly injures the plaintiff.  This is the case plaintiff makes. Surely it does not rebut, but confirms the presumption of wrong-doing and negligence in the servants of the company, who are not one of them sworn to explain their conduct.  It would seem that some verdict was demanded for the plaintiff, and, as the defendant concedes that the verdict rendered is not excessive, why should it not stand?

2.  The defendant says that it had the right to blow the whistle within the limits of Augusta, and that it cannot be mulcted in damages for acts incident to its business; that it had to pass a crossing at this point; and therefore blew it.  Conceding for a moment that it did have this right, yet it should exercise it in such a manner as not to injure others.  It is conceded that it is difficult to exercise the right and not frighten horses and cause accidents to occur to others; but the court below, we think, charged

---

*At the place where the horse took fright, the street or roadway ran alongside the railroad, and was separated from it by a wire fence; but a short distance from that point there was a crossing.

the law properly, in substance, when it said, "The author-
ity to operate a railroad includes the right to make
all the noises incident to the movement and working of its
engines, as in the escape of steam and rattling of cars, and
also to give the usual and proper admonitions of danger,
as in the sounding of whistles and ringing of bells. It is,
therefore, not liable, while exercising the right in a lawful
and reasonable manner, for injuries occasioned by horses,
when being driven upon the highway, taking fright at such
noises. In this connection, I charge you that a railroad
corporation must exercise its grant of power with a due
regard to the rights of others, and while the company, on
its own property, has the right to the free and unobstructed
right-of-way, and to make in the running of cars the noises
necessarily incident to the reasonable enjoyment of its
franchises, the people of the state are likewise entitled to
the reasonable use of the streets and roads, and to travel
thereon in the ordinary mode of travel in vehicles drawn
by horses, and it is the duty of a railroad company, in ap-
proaching or running alongside of a public street or thor-
oughfare, to so operate its cars as not unnecessarily to inter-
fere with rights of individuals traveling such streets or
thoroughfares by other modes of travel, or to endanger
such travel by unnecessary noises by which horses are
frightened, and if such railway companies fail to observe
and respect these rights in others, and so negligently act
as to cause them damage, the law wisely and justly makes
them responsible for all damage thus caused ".

It appears from the record that the first part of this
charge was in the language requested by the company,
and the balance as requested by the plaintiff. The sub-
stance of it is, "*sic utere tuo ut non lædas alieno;*" that
is to say, in the exercise of its right to blow whistles and
make noises incident to its property franchise, let the rail-
way companies, when approaching or alongside streets and
thoroughfares, moderate, so far as they reasonably can con-
sistently with that franchise, the exercise of this franchise

v 73-37

right in respect to the life, limb and property of others. We take this to be good sense and good law, especially when the cars are running within the limits of a city.

3. But was it lawful to blow the whistle at all within the limits of Augusta on approaching crossings of streets and avenues therein? If it was not, then the railroad company acted unlawfully, and had no property right by its franchise to blow the whistle, and was negligent, unlawfully negligent, of the rights of all traveling along the streets of that city. We are quite clear that section 710 of the Code operates to amend section 708, so as to make it unlawful for the engineers to blow their whistles in a city, irrespective of any ordinance of the city about it. The change is made in the act of 1875, and is codified as a proviso in section 710, and is in these words : " Provided, that within the corporate limits of the cities, towns and villages of this state, the several railroad companies shall not be required to blow their whistles on approaching crossings or public roads in said corporate limits, but in lieu thereof, the engineer of said locomotive shall be required to signal the approach of their trains to such crossings and public roads in said corporate limits by tolling the bell of said locomotive, and on failure to do so, the penalties of this section shall apply to such offense." The penalty for neglecting to blow the whistle, which the engineer was required to do in section 708, and which penalty is in the former part of section 710, is a fine of five hundred dollars and imprisonment ninety days, or either, and the company to pay the fine.

It was ingeniously argued by the very able counsel for the company, Mr. Cumming, that the object of the act of 1875, the proviso above cited, was intended only to shield the engineer from punishment for not blowing, if he rang, and to punish him if he did neither. Such, however, is not the correct construction of the law, as we look at it. It is a remedial statute. The old law—its evil—was this unearthly and continuous blowing of whistles in towns

and cities, and the remedy is the ringing of bells in lieu thereof. True, if the engineer fail to ring the bell, he can be punished now; whereas, if he does not blow, he cannot be; but the reason and spirit of the law lies deeper and extends broader. It meant in every city in Georgia to suppress the blowing of whistles, and to substitute the ringing of bells. It was necessary to give warning as before, but in cities and towns, the mode of warning was changed from a whistle blown to a bell rung.

This view of the case renders it unnecessary that we consider the ordinance of the city of Augusta or construe it, because the blowing of this whistle, however mildly and cautiously done, in the city was an unlawful act. No unlawful act is diligence in any business, and that mere act rivets negligence on the company. Whether the act was within the limits which the city ordinance embraced or not is thus immaterial, because the law of the state, without action by the city, prohibited the blowing the whistle in Augusta; and if error was committed by the court in construing and charging upon that ordinance, it cannot affect this verdict. It must stand, because there was an unlawful act which caused the injury; the plaintiff could not have foreseen that this unlawful act would be done within Augusta's bounds; he could not have avoided it, because he did not and could not foresee it; and his own negligence in sitting in the wagon, if it was negligence, was merely contributory, and not the sole cause of his injury; and the verdict, whose amount is not complained of, shows that the jury considered that carelessness on his part, and that negligence or carelessness on his part becomes shadowy and insignificant when he had reason to feel safe with a gentle horse if the whistle had not screamed, and which he had the best reason to think would not scream, because the law forbade the engineer to unthrottle it at that spot.

Judgment affirmed.