THE CENTRAL RAILROAD vs. RUSSELL.

1. The law requiring the checking of trains in passing a road crossing, applies to the crossings of streets in a city.

(a.) If the legislature has conferred upon the municipal authorities power to regulate the running of the trains of a railroad over the streets of a city, *semble*, that this would not nullify the general law, but would furnish an additional safeguard to save life and personal property. If the municipal authorities have not acted in the matter, no inference can be drawn of removal of restrictions on the speed of trains.

2. Where a railroad train came round a curve and approached a street crossing at a speed of twenty-five or thirty miles per hour, without checking its speed, running down grade, so as to render it impossible for the engineer to stop, or the owner of a horse and vehicle on the crossing to save them, the presumption of negligence resulting from an injury to the property was not rebutted. Nor did it appear that the owner could have saved the property from the injury.

(a.) The verdict was not excessive. This court will not generally look closely into small matters of amounts of damage, after the jury have passed upon them and the presiding judge had approved their finding.

December 1, 1885.

Railroads. Roads and Bridges. Streets and Sidewalks. Presumptions. Municipal Corporations. Verdict. Before Judge SIMMONS. Bibb Superior Court. April Term, 1885.

Reported in the decision.

LYON & GRESHAM, for plaintiff in error.

GUSTIN & HALL, for defendant.

JACKSON, Chief Justice.

The jury returned a verdict against the Central Railroad and Banking Company of Georgia, and in favor of Russell, for $200.00, for the killing a horse and breaking up a wagon and harness by the running of the train over a

crossing where Third Street, Macon, crosses the track to the Houston public road, negligently, as the wagon and horse went across that crossing.

Whereupon the railroad company moved for a new trial as follows:

(1.) Because the jury found contrary to the evidence.

(2.) Because the jury found contrary to law.

(3.) Because the court erred in charging the jury as follows: "He (plaintiff) claims that whenever they approach a railroad crossing within four hundred yards, they must ring the bell and check the speed of the train, and their failure to do that was the cause of the accident; therefore, he says that the railroad is liable. I have looked into that some, and I am inclined to think that the law applies to cities and towns as well as to country; therefore, I charge you, that it is the duty of the railroad corporation, whenever a train approaches a crossing, in a city or village, to give a signal by ringing the bell, and continue to ring it, and at the same time to check the speed, so as to be able to stop their train if anything should be on the crossing.

(4.) Because the jury found contrary to the following charge of the court: "Because a railroad failed to do its duty, he can't put his horse and wagon on the track and let it stay there, or he can't drive it there and let it remain there and be run over, and claim damages."

(5.) Because the damages are excessive.

The court overruled the motion for a new trial, and defendant excepted.

Thus it appears that the record makes two questions: First, does the law in respect to checking a train in passing a crossing apply to crossings on a street in a city, and must the engineer continue to check till the crossing is passed? This question was answered in the case of the *Georgia Railroad Co. vs. Carr*,\* and is no longer open in this court. The learned counsel for plaintiff in error tried

\* 73 *Ga.*, 557.

to take this case, without the ruling in Carr and the Georgia Railroad Company, by the fact that the state has transferred to the city of Macon the regulation of the running of the trains of this road over its streets; but it appears that the city has not acted upon that power over this street and at this crossing. If it had done so, it is doubtful, to say the least, whether that action would supersede or merely enlarge the precaution to save human life and personal property which the general assembly provided for the whole state, city as well as country.

Indeed, such policy is more necessary in cities than the country, because there is so much more travel over the crossings in cities and towns than in the country. We rather think that the grant of such power to the city would not nullify the general law, but would be construed to allow the cities to make additional safe-guards for the masses of people using the streets and crossings in their limits, even if the city of Macon had legislated upon the subject in respect to this street and crossing. But inasmuch as it has not legislated upon it, it would be quite a reckless inference and result from such non-action to say that the purpose was to open that street and crossing to trains running at twenty-five and thirty miles an hour. We are clear that its non-action leaves the state law in full force.

2. The other ground is that the verdict is not supported by the evidence. We think that it is. The train was not checked and kept in hand as it approached this crossing, but was running at a very rapid speed, from twenty-five to thirty miles an hour down grade, and had just turned a curve, which rendered it impossible for the engineer to stop, or for the wagoner or owner to save horse and wagon; fortunately their lives were saved by jumping from the wagon.

So that negligence, so far from its presumption against the company being rebutted, was proved positively and clearly.

Nor was there any chance for ordinary care to have saved the horse and wagon. Two or three seconds after turning the curve, the engine was upon them, and to save life was almost a miracle.

But the indefatigable counsel for plaintiff in error says that the verdict is excessive, because the wagon and harness were not utterly destroyed. They were a complete wreck, the defendant in error swore, and were at his house in a condition nearly, if not quite ruined, and surely the damage to them was over $25.00; and for the horse the owner was offered $175.00; he swore he was worth $150,00, and he had once been offered, I believe, $200 for him. Considering the wagon to be worth fifty dollars, with the harness, and that all was at the owner's home a wreck, and the horse $150.00 only, and the verdict is right. But we are not in the habit of looking closely into small matters, after the jury has acted and the judge approved, and only our respect for the able counsel has induced us to do so in this case.

Judgment affirmed.