EAST TENN., VA. & GA. RAILWAY CO. *v.* MARKENS.

1. Where there is no evidence that a passenger in a public hack knew of danger from an approaching train on a public crossing, the judge may so state to the jury, and may say that there is no evidence of any failure in duty on the part of such passenger to avoid the injury.

2. In the case of a female passenger in a public hack, a charge to the jury as follows was correct: "I do charge you that the negligence of the driver, if he was negligent, is not imputable in law to her. A person who hires a public hack and gives the driver directions as to the place where he wishes to be conveyed, but exercises no other control over the conduct of the driver, is not responsible for his acts of negligence or prevented from recovering against the railroad company for injuries suffered from a collision of its train with the hack, if the same was caused by the concurring negligence of both the manager of the train and the driver of the hack. The only negligence on the part of the driver which will defeat or otherwise affect the right of Mrs. Markens to recover is embodied in the following proposition: if the negligence of the driver was the sole cause and the real cause of the collision, she cannot recover. If the driver and the manager of the train were guilty of negligence, both concurring to bring the collision about, such negligence on the part of the driver cannot have the effect either to defeat or diminish the plaintiff's right to recover."

3. A female passenger in a public hack is under no duty to supervise the driver at a public crossing, nor to look or listen for approaching trains, unless she has some reason to distrust the diligence of the driver himself in respect to these matters.

4. The statute requiring the checking of trains and ringing of bells in approaching public crossings is applicable to this case, without reference to the distance from the crossing to the point at which the train started.

5. Though the court committed some slight errors in ruling upon the minor points of the case, as set out in the motion for a new trial, there was no error in refusing a new trial upon any of the grounds stated in the motion.

November 10, 1891.

Railroads.   Negligence.   Charge of court.   Practice. Before Judge VAN EPPS.   City court of Atlanta.   June term, 1891.

Mrs. Markens sued for damages and obtained a verdict, and the railroad company's motion for a new trial

was overruled. The charge ruled upon in the first division of the decision was as follows: "There is no evidence whatever in this case that Mrs. Markens was herself guilty of any contributory negligence in the transaction, or, if the defendant is shown to have been negligent in the legal sense, that she could by due care on her part have avoided the consequences to herself of such negligence. I do not, therefore, feel called upon to charge you anything upon the point of the plaintiff's own negligence, the negligence of Mrs. Markens herself."

The injuries were caused by the defendant's switch-engine with eight or ten cars being backed over a public street crossing in Atlanta (this crossing going over a number of railroad tracks) and striking a public hack in which the plaintiff was traversing the street. The negligence charged against the company was, in shoving the cars at a rate of speed higher than that allowed by the city ordinance, in not tolling the bell or checking speed as the crossing was approached, and in giving no warning, by flagman or otherwise, of the approach of the train. The defendant contended that the proximate cause of the collision was the negligence of the driver of the hack, and that the plaintiff was or could have been cognizant of the same but did not object to it, and was therefore chargeable with it.

DORSEY, BREWSTER & HOWELL, for plaintiff in error.

HOKE & BURTON SMITH and J. R. WHITESIDE, *contra.*

LUMPKIN, Justice.

1. While a judge is forbidden to express or intimate his opinion concerning a question of fact about which there is any doubt whatever, he may with propriety say to the jury that there is no evidence to support an alleged fact, when such statement is unquestionably true. The object of section 3248 of the code is to prevent

judges from interfering with the functions of juries in determining contested issues of fact when there is proof on both sides; but when an alleged fact is entirely unsupported by evidence, the judge may aid the jury by so informing them, thus relieving them of that much difficulty in reaching a correct conclusion in the case.

2, 3. Whatever the law formerly may have been, it is now well settled that the propositions contained in the charge of the court below quoted in the second headnote are correct and sound. So well are we convinced of this, we deem an elaborate discussion of the questions involved unnecessary. In the American & English Encyclopædia of Law, vol. 4, p. 83, we find the following: "It is now the rule in the United States courts, in England, and in most of the States of the United States, that the contributory negligence of a carrier is not attributable to a passenger." In volume 16, p. 447, of the same work, it is stated that: "There can be no such thing as imputable negligence, except in cases where that privity which exists in law between master and servant and principal and agent is found. In order for the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation of privity to the negligent person that the maxim *qui facit per alium facit per se* is directly applicable. It follows that all the cases in which the negligence of one person has been imputed to another in the absence of just this relation of privity are wrongly decided, and such is the effect of overwhelming recent cases." See, also, Flaherty v. Northern Pa. Ry. Co. (Minn.), 40 N. W. Rep. 160; Becke v. Mo. Pa. Ry. Co., 106 Mo. 544; Little v. Hackett, 116 U. S. 366, and authorities cited therein. And particularly, see note by reporter (Irving Browne) to case of Borough of Carlisle v. Brisbane, 57 Am. Rep. 488 to 511, inclusive, which treats of the subject in a most comprehensive manner;

also, the following text-books : Deering on Negl. §27 ;
1 Shear. & Redf. on Negl. (4th ed.) §66 ; Whit.. Smith
on Negl. 405–407 ; Beach on Contrib. Negl. §§32–36 ;
1 Thomp. on Negl. §38 ;  Thomp. on Car. of Pass. 284
*et seq.* ; Cooley on Torts, 684 ; Addison on Torts, §33 ;
Whart. on Negl. §344a.    These citations might be mul-
tiplied indefinitely, but even a casual examination of
those above mentioned will suffice to establish the rule
laid down by the court below.

It will also appear from the foregoing authorities, and
is entirely consistent with every-day experience, that
a female passenger in a public hack may trust that the
driver thereof will exercise proper caution and diligence
in avoiding collisions with railroad trains or other things
which would naturally result in injury to the vehicle or
its occupants.  If such driver were drunk, plainly in-
competent to ·manage his team or manifestly reckless, or
if for any other reason it was apparent to the passenger
that she could not safely rely upon him, probably the
duty would be upon her to supervise his conduct, and
compel him, if possible, to observe the requirements of
ordinary care and prudence in the management of his
vehicle, or else, leave the same.  No reason why the
plaintiff should do either appeared in this case, and we
therefore think she was under no obligation to overlook
or undertake to control the driver's movements, or get
out of the hack.

4. Section 708 of the code, relating to the erection of
blow-posts, the blowing of whistles and the checking of
trains in approaching public crossings, was, by the act
of 1875 (incorporated in section 710 of the code), modi-
fied, so far as cities, towns and villages are concerned,
by dispensing with the posts, by substituting the tolling
of bells for the blowing of whistles, and by requiring
engineers to signal the approach of their trains to public
crossings, no matter whether such trains were put in

motion at a distance of four hundred yards from such crossings, or at a point less than that distance. We do not mean to say the act in precise terms makes these changes, but it seems unquestionable that they were intended to be made thereby. In the very nature of things, the legislature could not have intended that the approach of trains to public crossings in towns and cities should be signaled only when the train began to move at a point four hundred yards, or more, distant therefrom. The absolute absurdity of such intention in the legislative mind shows conclusively that it did not exist. The purpose of the act undoubtedly was to protect persons and property on street crossings in towns and cities, and this could not possibly be accomplished if warnings of the approach of trains and locomotives need be given only when they were set in motion nearly a quarter of a mile from any particular street crossing in question. The law meant that in towns and cities, engineers and other persons in control of trains should *always* be cautious in approaching crossings, and have their powerful machines under such control as in every instance to be able to prevent collisions in such places. That this court has so regarded and construed the law is evident from its rulings in the following cases: *Atlanta & West Point R. R.* v. *Wyly*, 65 *Ga.* 120; *Georgia R. R.* v. *Carr*, 73 *Ga.* 557; *Central R. R.* v. *Russell*, 75 *Ga.* 810; *Western & Atlantic R. R.* v. *Young*, 81 *Ga.* 417; *Georgia Midland & Gulf R. R.* v. *Evans*, 87 *Ga.* 673, 13 S. E. Rep. 580. Numerous other decisions of this court might be cited, but the above will suffice.

The case of *Morgan* v. *Central R. R.*, 77 *Ga.* 788, even if correct in holding that section 708 of the code does not apply to trains operating between points where blowposts are or should be located, and public crossings, is not applicable here, because in that case the injury did not take place in a city, town or village, and the case

was not, therefore, within the act of 1875 above mentioned.

5. The motion for a new trial contains thirty-five grounds. We have carefully considered all of them, and find that the court did commit some slight errors in its rulings upon questions of minor importance, but none of them are sufficiently serious to authorize or require the granting of a new trial. The controlling questions in the case are those which we have already discussed, and the court having ruled correctly upon these, we are of the opinion that the judgment below should be, and accordingly it is, ·          *Affirmed.*