## BERNHARDT v. CITY & S. RY. CO.

### PHŒBUS v. SAME.

(Court of Appeals of District of Columbia. Submitted February 5, 1920. Decided March 1, 1920.)

### Nos. 3298, 3299.

1. DEPOSITIONS ⬅95—COUNSEL MAY READ PART DESIRED, IF NOT FRAGMENTARY OR MISLEADING.

Counsel for defendant had a right to read as a part of his own case so much of a deposition as he desired, which was not clearly fragmentary and misleading.

2. DEPOSITIONS ⬅95—WHEN PART OF DEPOSITION IS INTRODUCED, OTHER SIDE MAY INTRODUCE ANYTHING EXPLAINING THAT INTRODUCED.

Where defendant reads in evidence a part of a deposition, plaintiff may present so much of it as has a tendency to explain or contradict what has been read by defendant, or, in other words, so much as would be proper as cross-examination, if the testimony had been given by the witness on the stand.

3. EVIDENCE ⬅89—THAT PHYSICIAN HAD REFUSED TO MAKE EXAMINATION FOR PURPOSE OF TESTIFYING INADMISSIBLE.

In an action for injuries, testimony that a physician who had attended plaintiff refused to make a further examination for the purpose of testifying for him was properly excluded.

4. EVIDENCE ⬅89—PLAINTIFF MAY SHOW WHY WITNESS DOES NOT TESTIFY, BUT NOT THAT HE REFUSES TO APPEAR.

In an action for injuries, plaintiff may, if he can, overcome the presumption that his attending physician's testimony would be unfavorable by showing why he does not testify, but cannot show that the doctor refused to appear, as he could coerce his appearance by subpœna.

5. TRIAL ⬅253(4)—INSTRUCTIONS ON IMPUTED NEGLIGENCE OF DRIVER IMPROPER, AS WITHDRAWING QUESTION OF AGENCY.

In actions for injuries, where it was a jury question whether driver of a truck on which plaintiffs were riding was their agent, an instruction that the driver's negligence was not imputable to plaintiffs was properly refused.

6. NEGLIGENCE ⬅93(1)—MOTOR TRUCK DRIVER'S NEGLIGENCE IMPUTABLE TO INJURED OCCUPANTS, IF THEIR AGENT, SUBJECT TO THEIR CONTROL.

The negligence of the driver of a motor truck, on which plaintiffs were riding when it was struck by a street car, was imputable to them, if he was their agent or representative, and, as such, subject to their directions.

7. NEGLIGENCE ⬅136(30)—MOTOR VEHICLE DRIVER'S AGENCY FOR INJURED OCCUPANTS HELD A JURY QUESTION.

In an action for injuries in a collision between a street car and a motor truck, conveying a party of boys and girls, evidence that the owner, at the request of his nephew, one of the party, sent the driver to give the party a ride, held to make it a question for the jury as to whether the driver was the agent of plaintiffs, and subject to their control and direction.

8. WITNESSES ⬅379(8)—TESTIMONY NOT INADMISSIBLE, BECAUSE NOT IN HARMONY WITH TESTIMONY ON FORMER TRIAL.

That a witness on a former trial gave testimony which was not in harmony with his testimony on a subsequent trial did not render his testimony inadmissible, but went only to its credibility.

9. NEGLIGENCE ⟨⟩93(1)—DRIVER'S NEGLIGENCE NOT IMPUTABLE TO PERSONS RIDING, IF HE WAS NOT THEIR AGENT.

If the driver of a truck was an employé of the owner, and was not subject to the control or direction of the persons riding on the truck, and they did not exercise any control over him, his negligence could not be imputed to them.

10. TRIAL ⟨⟩191(8)—INSTRUCTION HELD ERRONEOUS AS ASSUMING THAT PERSONS RIDING ON TRUCK WERE NOT RESPONSIBLE FOR DRIVER'S NEGLIGENCE.

In an action for injuries sustained in a collision between a street car and a motor truck, an instruction to find for plaintiffs if the street car was going at an excessive speed and the accident was caused thereby, providing plaintiffs were not guilty of contributory negligence, was properly refused, as assuming that plaintiffs were not responsible for the driver's negligence, which was a question of fact.

11. STREET RAILROADS ⟨⟩90(3)—MOTORMAN NOT ABSOLVED FROM NEGLIGENCE IN FAILING TO SOUND GONG BECAUSE DRIVER OF VEHICLE SHOULD HAVE SEEN THE CAR.

While it was not negligence for a street car motorman to fail to sound the gong as he approached a crossing, if the driver of an approaching vehicle saw the car approaching, he was not absolved from negligence merely because the driver should have seen the car.

12. NEGLIGENCE ⟨⟩91—DUTY OF PERSONS RIDING IN HIRED VEHICLE DEFINED.

A person riding in a hired vehicle is not required, save under exceptional circumstances, to be on the lookout for danger, but may assume that the driver will exercise proper care and caution; but if he knows that the driver is incompetent or careless, or unaware of a danger, and is not taking proper precautions, it is his duty to notify the driver, and it may devolve upon him to take some other suitable action for his own protection.

13. NEGLIGENCE ⟨⟩136(9)—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE FOR JURY, WHEN THERE IS EVIDENCE THEREOF.

Negligence and contributory negligence are only questions for the jury when there is some evidence on which they could rest a verdict; and if the evidence is such that in the opinion of the court all reasonable men would agree that there was no negligence, the question is for the court.

14. APPEAL AND ERROR ⟨⟩273(6)—GENERAL EXCEPTION TO INSTRUCTION PARTLY SOUND INSUFFICIENT.

If a request for an instruction contains several propositions of law, some of which are sound and others not, an exception to the request, not specifying any particular part thereof, is too indefinite to require a review; but where the request contains but one proposition of law, the exception is sufficient.

15. APPEAL AND ERROR ⟨⟩724(2)—ASSIGNMENTS SHOULD BE DEFINITE.

The assignments of error should be definite.

Appeal from Supreme Court of the District of Columbia.

Two actions, by Winfield Bernhardt, a minor, by his next friend, William F. Bernhardt, and by Charles E. Phœbus, an infant, by his next friend, Edgar E. Phœbus, against the City & Suburban Railway Company. From a judgment for defendant in each action, plaintiffs appeal. Reversed and remanded, with directions.

R. F. Downing and M. A. Easby-Smith, both of Washington, D. C., for appellants.

R. J. Whiteford, of Washington, D. C., for appellee.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SMYTH, Chief Justice. These cases were tried together in the lower court, were submitted to us as one, and as such they will be disposed of.

A party of 30 boys and girls, accompanied by a married couple, were conveyed on a motor truck from Washington to Marlboro, where they attended a dance. After the dance, they returned on the truck to Washington. As they were crossing C street at the intersection of Eleventh, N. E., the truck was struck by an east-bound car of the defendant company, and thereby injuries were inflicted upon the two appellants. From a judgment against them, they appeal.

[1, 2] The deposition of one Richards was taken in another case, and it was stipulated between the parties to the cases before us that it might be read in those cases "the same as if it had been originally taken for that purpose." The plaintiffs refused to read it at the trial. Thereupon counsel for the defendant offered to read certain parts of it. Plaintiffs objected, on the ground that, if the defendant desired any part of it, the whole would have to be read. The court ruled that the entire deposition must be read, but as the testimony of plaintiffs. In this we think there was error. Counsel for the company had a right to read as a part of his own case so much of the deposition as he desired, which was not clearly fragmentary and misleading, and thereupon it became the right of the plaintiffs to present so much of it as had a tendency to explain or contradict what had been read by the defendant; in other words, so much as would have been proper as cross-examination, if the testimony had been given by the witness upon the stand, instead of through a deposition. Central Coal & Coke Co. v. Penny et al., 173 Fed. 340, 346, 97 C. C. A. 600; H. Scherer & Co. v. Everest, 168 Fed. 822, 827, 94 C. C. A. 346; Crotty v. Chicago Great Western Ry. Co., 169 Fed. 593, 95 C. C. A. 91; 18 Corpus Juris, § 346, p. 735.

[3, 4] One of the plaintiffs offered to show that a physician who had attended him refused to make a further examination for the purpose of testifying for him. The offer was rejected. It having appeared in the record that the doctor had treated the plaintiff, it would have been proper for the defendant to argue that the failure of the plaintiff to call him as a witness justified the inference that, if called, his testimony would be adverse to plaintiff's case. MacConnell v. Wood, 47 App. D. C. 424; Huff v. Gulick, 38 App. D. C. 334; Kirby v. Tallmadge, 160 U. S. 379, 383, 16 Sup. Ct. 349, 40 L. Ed. 463. It was therefore proper for him to overcome this presumption, if he could, by showing why the doctor did not testify. But we think that a statement to the effect that the doctor refused to appear in court was immaterial, since the plaintiff could have coerced his appearance by the service of a subpœna. It may be that it would have been a dangerous experiment, as suggested by counsel for the plaintiff, to put the doctor on the stand under the circumstances; but plaintiff was not required to do this. He had his choice, either to call him or suffer the effects of the presumption which the law would raise in the event that he was not called. The court did not err in the ruling complained of.

[5, 6] Nor did the court err in refusing to give the fourth prayer of

the plaintiffs, which said in effect that the negligence of the driver was not imputable to the plaintiffs. If this had been given, it would have taken from the jury the question as to whether or not the driver was the agent or representative of the plaintiffs, and, as such, subject to their directions. If he was, his negligence would be imputable to them. Anthony v. Kiefner, 96 Kan. 194, 150 Pac. 524, L. R. A. 1915F, 876, Ann. Cas. 1916E, 264; Markowitz v. Metropolitan Street Railway Co., 186 Mo. 350, 85 S. W. 351, 69 L. R. A. 389; Kuchler v. Milwaukee E. R. & L. Co., 157 Wis. 107, 146 N. W. 1133, Ann. Cas. 1916A, 891.

[7, 8] By giving the seventh prayer the court told the jury that the plaintiffs had borrowed the truck, had hired the driver thereon, and had made such driver their agent. Thus the court took from the jury the question as to whether or not the driver was the agent of the plaintiffs, for whose acts they would be responsible, and resolved it as a matter of law. Bayne, the owner of the truck (one of six which belonged to him), a bricklayer and contractor, doing business in the District, a substantial business man, testified in chief that at the request of his nephew, one of the party, he loaned the truck "to take the bunch down on a straw ride"; told Robb, the driver, an employé of his, where to meet the party; that if Robb refused to go he would discharge him; that there was no understanding that the boys and girls would pay him or Robb anything for the service of the truck; and that none of the party, outside of his nephew, ever spoke to him with regard to the ride. On cross-examination, he said that Robb was working for him at the time when he was operating the truck conveying the party; that he regarded himself as responsible for the conduct of Robb, even if one of the party was killed through his negligence. Robb said that none of the party, except Bayne's nephew, spoke to him about making the trip; that he made the trip in obedience to the directions of his employer, Bayne; that the boys and girls did not have any control over him in regard to the management, or direction, or operation of the machine; and that they did not attempt to exercise any over him. It is true that Robb at a former trial gave some testimony which was not in harmony with the testimony given in the trial which we are considering, but that did not render his testimony inadmissible. It went only to its credibility.

[9] We have not quoted all the testimony upon the point involved, but we are satisfied that what we have quoted was sufficient to require the court to submit to the jury the question as to whether or not Robb was the agent of the plaintiffs, and subject to their control and direction in the operation of the truck, and that it erred in ruling, as a matter of law, that he was. If he was an employé of Mr. Bayne, and was not subject to their control or direction, and they did not exercise any control over him, they were not responsible for his negligence, and it could not be imputed to them. Burke v. Anacostia & Potomac Ry. Co., 48 App. D. C. 296, and cases there cited.

[10] The court did not err in refusing to instruct the jury that, if they found from the evidence that the street car was going at a speed exceeding 15 miles an hour, and the accident was caused thereby, the

verdict must be for the plaintiffs, provided the plaintiffs were not guilty of contributory negligence, because this assumed that the plaintiffs were not responsible for the negligence, if any, of Robb, the driver. Whether they were or not depended, as we have just said, upon the question of fact as to whether he was subject to their direction or independent of them.

[11] By the fifth instruction, part of which was given at the request of the defendant and part on the court's own motion, the jury were told in effect that, if the driver of the truck saw "or should have seen the car of the defendant company while he was such a distance from the tracks as that by the exercise of reasonable care he might have stopped the truck in time to have avoided the accident," it was not negligence for the motorman to fail to sound the gong on his car as he approached the crossing. We think this was error. Of course, if the driver saw the car approaching, there would be no need for the sounding of the gong. But this instruction went further, and, as a matter of law, absolved the motorman from negligence, even if the driver did not see him. The purpose of ringing the bell is to warn, not only those who cannot see, but also those who can, and through inattention or other cause fail to see. Whether or not their failure to see under such circumstances would be contributory negligence is a question not before us.

The court further instructed the jury, at the request of the defendant, that whether the driver was hired by the plaintiffs, or by some one else, the plaintiffs were not excused from exercising reasonable care for their own protection, and that if by the exercise of such care they could have seen the approach of the car in time to have saved themselves from injury, or to have warned the driver in time for him to have avoided the accident, but failed to do so, they would be guilty of contributory negligence, which would prevent their recovering. Undoubtedly, the plaintiffs were obliged to use reasonable care for their own protection. But what did this require of them? The instruction implies that there was evidence in the case sufficient to support a verdict that they had not taken such precautions for their safety as they should have taken, and that their failure to do so contributed to their injuries. The instruction is defended upon the theory that it was the duty of the plaintiffs to observe the driver's movements, be on the lookout for danger, and to warn him of its nearness; and this, it is said, is so, even though the jury found that the driver was not subject to their control or direction, and that they did not control him.

This presents a question upon which the authorities are in hopeless confusion. Mr. Thompson, in his work on Negligence (volume 2, § 1621), divides them into three classes: Those which hold that a person riding as a mere companion or guest must keep a lookout, and not leave that duty entirely to the driver; those holding that the caution to be exercised by the person riding, but not driving, whether he is bound to keep a lookout and warn the driver or not, is in all circumstances to be determined by the jury; and those holding "that a person riding with a competent driver, over whom he has no control, is under no duty to maintain a lookout, but may commit that duty to the driver, without sustaining the imputation of contributory negligence—a doctrine which

is generally, though not always, confined to cases of passengers riding in conveyances, public or private." As belonging to the last class, he cites many decisions. Among them are O'Toole v. Pittsburg R. Co., 158 Pa. 99, 27 Atl. 737, 22 L. R. A. 606, 38 Am. St. Rep. 830; East Tennessee, etc., R. Co. v. Markens, 88 Ga. 60, 13 S. E. 855, 14 L. R. A. 281; Pyle v. Clark (C. C.) 75 Fed. 644; New York, etc., R. Co. v. Steinbrenner, 47 N. J. Law, 161, 171, 54 Am. Rep. 126; Wilson v. N. Y., N. H. & H. R. R. Co., 18 R. I. 598, 605, 29 Atl. 300.

In the East Tennessee case the court said:

"That a female passenger in a public hack may trust that the driver thereof will exercise proper caution and diligence in avoiding collisions with railroad trains or other things which would naturally result in injury to a vehicle or its occupants."

Judge Buffington, speaking for the Circuit Court of Appeals, Third Circuit, in Brommer v. Pa. R. R. Co., 179 Fed. 577, 581, 103 C. C. A. 135, 139 (29 L. R. A. [N. S.] 924), a case cited by the appellee, said:

"It is true there are cases, but this is not one of them, where a person hires a supposedly capable driver, and being regarded by the law as a passenger for hire, and as having no part in the management or control of the vehicle, is visited with no duty to help safeguard it."

If the plaintiffs' theory be correct, they had hired a supposedly capable driver, and, following the rule stated by Judge Buffington, there was no duty resting on them to safeguard the vehicle.

The Supreme Judicial Court of Massachusetts, in Shultz v. Old Colony Street Ry. Co., 193 Mass. 309, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 408, ruled that, if a guest of the driver of a vehicle "had no ground to suspect incompetency, and no cause to anticipate negligence on the part of the driver, and if the impending danger, although in part produced by the driver, was so sudden, or of such a character, as not to permit or require her to do any act for her own protection," she was entitled to recovery.

The Supreme Court of California held in Thompson v. Los Angeles, etc., R. Co., 165 Cal. 748, 753, 134 Pac. 709, 712, that, if a "passenger is aware that the operator is carelessly rushing into danger, it may be incumbent upon him to take proper steps for his own safety." But, inferentially, where he is not conscious of the danger, no obligation rests upon him to look out for it. "It is a mistake," said the court in Ill. Cent. R. Co. v. McLeod, 78 Miss. 334, 342, 29 South. 76, 77 (52 L. R. A. 954, 84 Am. St. Rep. 630), "to suppose that a passenger in an open buggy need not exercise the commonest prudence, the most ordinary care, when the danger of his surroundings is apparent."

As was observed by Judge Marshall in Pyle v. Clark (C. C.) 75 Fed. 644, 647:

"It is a matter of common experience that passengers in a vehicle trust to the driver to avoid the ordinary dangers of the road, and I do not know of any principle of law which requires them to tender advice, unless conscious of the driver's ignorance or want of care."

[12] It seems to us that where, for instance, a person hires a taxicab to convey him from his residence to a depot or some other point,

he is not required, save under exceptional circumstances, to be on the lookout for danger at the risk of being charged with contributory negligence in case of accident, if he fails to do so. The primary duty of caring for the safety of the vehicle and passenger rests upon the driver, and unless the danger is known to the passenger he may rely upon the assumption that the driver will exercise proper care and caution. But if the passenger knows that the driver is incompetent or careless, or that he is not aware of a danger known to the passenger, and is not taking proper precautions, it is his duty to notify the driver of the peril, and it may devolve upon him to insist that the driver shall stop the vehicle and allow him to alight, or take some other suitable action for his own protection. If the passenger fails in any of these respects, he may be chargeable with contributory negligence. Anthony v. Kiefner, 96 Kan. 194, 200, 150 Pac. 524, L. R. A. 1915F, 876, Ann. Cas. 1916E, 264. Whether the passenger knew of the danger may be inferred by the jury from the circumstances of the particular case; e. g., if he was seated beside the driver, with nothing to obstruct his view, the jury might well conclude that he saw the danger, even though he denied knowledge of it. We do not, of course, mean to lay down an inflexible rule for the government of all cases, where the passenger has no right to direct the driver, and does not exercise any control over him, because there may be some in which the circumstances would require that an exception should be made.

In the light of authority and principle, we are convinced that the part of the instruction we have been examining is erroneous and should have been omitted.

The appellee asserts that our decision in Burke v. Anacostia & Potomac Ry. Co., 48 App. D. C. 296, seems to decide that a passenger in an automobile, where the negligence of the chauffeur was not imputable to him, could not himself, under any circumstances, be guilty of contributory negligence. We did not so hold. The language used must be construed in the light of the facts of the case in which it was used. We said, quoting from Southern Pacific Co. v. Wright, 248 Fed. 264, 160 C. C. A. 342, that—

"Generally it is the duty of the passenger to sit still and say nothing. It is his duty, because any other course is fraught with danger. Interference, by laying hold of an operating lever, or by exclamation, or even by direction or inquiry, is generally to be deprecated; in the long run, the greater safety lies in letting the driver alone."

It will be noticed that the word "generally" was used. This indicates that there may be cases in which the passenger would be guilty of negligence contributing to the injury. When the language is construed, as it should be, with reference to the position in which Mrs. Burke was, it embodies a sound rule of law (Anthony v. Kiefner, supra), and we adhere to it.

[13] Counsel for appellee is correct when he says we have often decided that questions of negligence or contributory negligence are usually for the jury. But they are to go to the jury only where there is some evidence upon which the triers of fact could rest a verdict. If the evidence is such that, in the opinion of the court, all reasonable men

would agree that there was no negligence on the part of the plaintiff contributing to the accident, the question would be for the court, not for the jury. We do not think it necessary to cite any authorities to support this elementary proposition.

Since the ninth prayer of the defendant, given by the court, proceeded on the assumption that the plaintiffs were responsible, as a matter of law, for the negligence of the driver, it was misleading, and should not have been given, for the reasons heretofore set forth when discussing the seventh prayer.

[14] It is earnestly urged by the defendant that the exceptions taken by the plaintiffs to the instructions which we have been considering, and the assignment of errors relating to them, are too indefinite to require or permit their review. To each request the plaintiffs simply noted an exception, without specifying any particular part of the request. The exception went to the whole request. If a request contains more than one proposition of law, some of which are sound and others not, the rule invoked by the defendant would apply (Edgington v. United States, 164 U. S. 361, 365, 17 Sup. Ct. 72, 41 L. Ed. 467; Rogers v. The Marshal, 1 Wall. 644, 654, 17 L. Ed. 714; Wash. & Old Dom. Ry. Co. v. Slyder, 43 App. D. C. 95, 100; Carmody v. Capital Trac. Co., 43 App. D. C. 245, 251, Ann. Cas. 1916D, 706), but where each contains but one proposition of law, an exception such as was taken is sufficient. There is but one proposition in the third request. It deals with the single question as to whether the negligence of the driver was imputable to the plaintiffs; but the fifth and possibly the sixth are in a different category. The fifth is correct, except as to that part which says that there was no duty resting on the motorman to sound the gong, if the driver by the exercise of reasonable care could have seen the approach of the car; yet the exception covers the correct and incorrect elements. It is therefore ineffective. We have, however, dealt with the defective exceptions, as well as with the others, for the reason that, since a new trial must be awarded on account of the latter, we deem it proper that our view of the law touching the former should be known when that trial takes place.

[15] What has been said relative to exceptions to instructions is also applicable, ordinarily, to assignments of errors. They, too, should be definite; but the reason requiring this is not so imperative as in the case of instructions. Their definiteness is demanded, to the end that the trial court may be pointedly advised as to what the objection relates to, so that it may have an opportunity to eliminate the vicious part, if any, and thus save the expense and delay of a new trial.

The judgments are reversed, at the cost of the appellee, with directions to grant a new trial according to the views expressed in this opinion.

Reversed.