### 29369. ATLANTA, BIRMINGHAM AND COAST RAILROAD COMPANY *v.* LOFTIN.

DECIDED JULY 14, 1942.

*Lovejoy & Mayer, W. S. Allen,* for plaintiff in error.
*John J. Neely, J. F. Hatchett,* contra.

BROYLES, C. J. Ann Loftin, by her next friend, H. G. Loftin, sued the Atlanta, Birmingham & Coast Railroad Company to recover damages for personal injuries. The jury awarded the plaintiff a verdict for $1000, and the only exception is to the judgment overruling the defendants' motion for new trial based solely on the general grounds.

The petition substantially alleges in part that Ann Loftin (herein referred to as plaintiff) was six years old when she was injured on August 24, 1939, as the result of the defendant's employees run-

ning its motor car into the automobile in which she was riding; that the collision occurred on a crossing one or two miles from Alvaton, Georgia, where State Highway No. 85 crosses defendant's railroad; that at the time of the collision the plaintiff was riding as a guest on the back seat of an automobile owned and operated by Gordon McCrary, and was exercising no control over either McCrary or the automobile; that as a result of the defendant's negligence the plaintiff received severe injuries in and about her mouth from which she suffered excruciating pain, and which caused a permanent disfiguration of her mouth, face and jaw, with consequent humiliation and embarrassment; and that "at the time of the accident and immediately preceding the same, defendant's motor car was traveling at a very low rate of speed, and that . . defendant should have seen the automobile . . and stopped the motor car, thereby avoiding injuries to said Miss Ann Loftin." The specifications of negligence in the petition may be summarized as follows: the defendant was negligent: (a) in "failing to give any signal, warning or notice whatsoever while approaching said crossing as it was its duty to do under the circumstances;" (b) in failing to anticipate plaintiff's presence upon the crossing; (c) in failing to keep a close lookout ahead; (d) in failing to see the automobile and stopping the motor car in time to avoid injuring the plaintiff; (e) in failing to exercise ordinary care at the time of and immediately preceding the accident.

In its answer the defendant admitted the location of the crossing on which the collision occurred, and admitted that at the time of the accident the plaintiff was six years old, riding as a guest in an automobile owned and driven by Gordon McCrary, and that she had no control over either McCrary or the automobile. The defendant denied that plaintiff was injured as a result of its negligence and denied liability. The defendant further pleaded that its motor car had come to a complete stop when the accident occurred and that the automobile ran into the motor car; and that "the negligence of the driver of said automobile was the sole and proximate cause of any injuries which the plaintiff suffered."

The evidence disclosed that in approaching the crossing in the direction the automobile was traveling the highway curved slightly to the left, and there was a gentle rise in it as it neared the crossing. The railroad was practically straight on both sides of the

crossing and was up grade as it approached the crossing from the direction in which the defendant's motor car was traveling. The highway crossed the railroad practically at right angles. The accident occurred at about eleven o'clock in the morning. It was drizzling rain slightly, but the visibility was sufficiently good for a person whose view was unobstructed to see several hundred feet in any direction. The automobile was approaching the crossing in a southerly direction, and the motor car was approaching it from the right side of the driver of the automobile. There was evidence that the plaintiff was severely injured as a result of the collision.

Gordon McCrary, the driver of the automobile, testified in part: "I looked to . . my right to see if anything was coming. I didn't see the motor car. . .. I knew it was about eleven o'clock, about time for the morning passenger train, and I was looking back up the track to see if this train was coming, and about that time my wife commenced screaming. I didn't know what was happening. I had run up on the track and this motor car struck me. . . It [the passenger train] was coming [about due to come?] from the north on my left side . . towards Gray. The motor car was coming . . towards Alvaton. In other words, the passenger train would have been coming from the opposite direction from what the motor car was coming. . . I could see the railroad. I could see a good long ways in front of me. About the crossing in the direction from which the motor car was coming, I could not see so very well. . . There were weeds and bushes and things growing along the railroad bank . . to obstruct my view. . . I guess I could have seen the motor car if it hadn't been for the bushes. . . I certainly did slow up when I approached the track. . . When the collision took place the motor car was right in the middle of the public road, very near the center of the road. . . . I wouldn't say whether it [the motor car] was moving or not when the collision took place. . . The front end of my car was struck at the right end, the left side of the motor car just about the front wheels. . . At the time of the accident this road at the crossing was about eight feet wide, or possibly ten . . just wide enough for a car to go by and have a little space on each side. Two automobiles could not pass there at the same time." In reply to several witnesses who had testified that immediately after the collision Gordon McCrary had stated

that the collision was "all his fault," McCrary swore in substance that he may have made such a statement, but that he was greatly excited at the time and that the collision was not his fault.

Mrs. M. G. McCrary, who was in the automobile at the time of the accident, testified in part as follows: "I was about ten feet from the crossing . . when I first saw the motor car. I screamed. The motor car hit the car in which we were riding, struck the fender and the front end of the fender. . . The motor car gave no signal at all, no warning. . . My husband was driving. He was looking up the railroad to see if the train was coming. . . He was looking down the road before it [the motor car] come so close to him. He couldn't see it because the view was obstructed by briars, weeds and an old tree. Me and my husband were familiar with the crossing. We had gone over it hundreds of times. . . The children were on the back seat, three of them, looking at some books. . . The motor car struck our car, I am sure of that. The motor car was running. I don't know how far it run after it struck. It did not stop on the south side of the crossing. It ran half way up to the middle of the dirt road."

A. J. Barnes Jr., after testifying how and where the automobile was injured, swore that he did not know "whether the car hit the motor car or whether the motor car hit the car."

E. L. Lane, the defendant's section foreman, testified in part as follows: "I had six men on that motor car. I had a trailer on behind. There were two hundred pounds of tools on the trailer. I was sitting on the front end on the left-hand side. That was the side from which the automobile approached. John Kimbrough was operating the motor car. . . We were traveling something like fifteen miles per hour. When I first saw the automobile it was something like 150 or 200 feet away. I . . was about the same distance from the crossing. I kept looking at the automobile. Then I told the man operating the car to get the car under control to stop. He slowed down. I kept watching the car. The car seemed to be coming across, and the motor car stopped just in the outside rut. At the time of the impact the motor car had stopped. . . I would say the automobile ran into my car. It struck my car on . . the left-hand side right over the front wheel. . . The impact knocked the motor car twelve inches off of the rails,

. . . The crossing is about fourteen or fifteen feet wide. . . We had brakes on the motor car, steel brakes. . . You can stop in 66 feet if the rail is dry. . . If the rail isn't dry it would take . . . about a rail and a half further, or two rails further to stop. . . . When I first saw the automobile about fifteen rails back I was going about fifteen miles per hour. . . It took about 100 feet to stop the car in the speed we were going. . . I didn't jam the brakes when I first saw him . . eased them in. In other words, we put it [the motor car] under control so we could stop it if we had to. I misjudged it, probably six or eight inches." The witness further testified that right after the collision Gordon McCrary told him that it was all his (McCrary's) fault.

John Kimbrough testified in part: "I was operating the motor car. . . It was up grade. . . I was about 300 feet from the crossing when I first saw the car coming. . . Might have been further than that. . . I knew he was coming towards the crossing but I thought he was going to stop. I did slow up. I run that car every day. It has four-wheel brakes. When I apply those brakes I can stop that car in about two rail lengths. A rail is 33 feet long. I can stop it in 66 feet. . . It was 300 feet away when I first saw this automobile. I knew it was coming down the road to cross the . . track. I slowed it [the motor car] down getting it under control so I could stop it. I didn't get in the road before I stopped. . . I stopped in the edge of the crossing. I don't know whether I could have stopped further back or not." The witness further testified that the collision did not occur on the crossing at the place where automobiles crossed over the railroad tracks, and that McCrary drove his automobile down the tracks, off of the crossing, and hit the motor car, and that he heard McCrary say that it was all his fault.

While we have not attempted to set out either the testimony of all the witnesses or all the testimony of any one witness, we think we have stated enough of the evidence to illustrate the material issues in the case. Since the plaintiff was a six-year-old child, riding as a guest in the automobile which collided with the defendant's motor car at the crossing, and was under no duty, and had no right, to control or influence the conduct of the driver of the automobile, any negligence of the driver that contributed to causing the collision was not imputable to the child. *Roach* v. *W.*

& A. Railroad Co., 93 Ga. 785 (4) (21 S. E. 67); Wilkinson v. Bray, 27 Ga. App. 277 (108 S. E. 133); Mayor & Aldermen of Savannah v. Waters, 27 Ga. App. 813 (109 S. E. 918), and cit.; Code, § 105-205. In such a case a recovery by the plaintiff of damages for personal injuries resulting from the collision could only be defeated if the negligence of the driver of the automobile was the sole cause of the collision; and, if the negligence of the defendant's employees who were in charge of the motor car and the negligence of the driver of the automobile concurred in bringing about the collision, the negligence of the driver of the automobile would not defeat the plaintiff's right to recover. East Tenn., Va. & Ga. Ry. Co. v. Markens, 88 Ga. 60 (2) (13 S. E. 855, 14 L. R. A. 281); Pollard v. Gorman, 52 Ga. App. 127, 132 (4) (182 S. E. 678); Drury v. Franke, 247 Ky. 758 (19) (57 S. W. 2d, 969, 88 A. L. R. 917); 38 Am. Jur. 936, § 246. The facts of the instant case clearly differentiate it from Brinson v. Davis, 32 Ga. App. 37 (122 S. E. 643), and Hallman v. Powell, 60 Ga. App. 339 (4 S. E. 2d, 404), relied on by counsel for plaintiff in error to support their contention that "the plaintiff's injuries were caused solely by the negligence or want of ordinary care on the part of the driver of the car in which Ann Loftin was riding as a guest."

The evidence was in sharp conflict as to whether the view of McCrary as he approached the crossing was obstructed by weeds, bushes and trees, as to whether the motor car was stopped before it reached the crossing, as to whether the automobile ran into the motor car or vice versa, and as to whether the collision actually occurred on that part of the crossing used by automobiles, wagons and other vehicles in crossing the railroad tracks at that point. The conflicting evidence, while amply authorizing a verdict for the defendant, also authorized the verdict for the plaintiff. The jury, as they had a right to do, evidently believed the witnesses for the plaintiff and rejected the evidence of the witnesses for the defendant; and the finding of the jury having been approved by the trial judge, and no error of law appearing, this court is without authority to interfere.

Judgment affirmed. MacIntyre and Gardner, JJ., concur.